**GROUND ONE:  PLEA COUNSEL HAD AN ACTUAL CONFLICT WITH THE DEFENDANT REQUIRING THE PLEA BE VACATED UNDER THE FEDERAL STANDARD.**

Plea counsel had an actual conflict with the defendant requiring the plea be vacated under the Federal standard.

The petitioner demonstrated that the disbarred attorney stole $10,000 from the petitioner and was attempting to retain it under the guise that it was a fee.  It was only returned when directly confronted by the bank official.

This behavior is similar to the conduct of the disbarred attorney in his Federal prosecution. A. 3/422-442, 450, 461-631 (Citations to the Record Appendix from the Massachusetts Appeals Court.) It was detailed during his Federal prosecution that he did not escrow funds for his employees' taxes as required by Federal law, when confronted told a Federal agent untruthfully stated that his son was responsible for escrowing funds, lied during the Federal prosecution and indicated the Federal agent falsely imprisoned him (locked him in a room), and he received a substantial jail sentence. It is significant that the prosecution of the disbarred attorney began when he filed false tax returns with a bank to secure a loan for a yacht/large boat. The bank as it was required to sought copies of his tax returns from the US government and when they compared these returns obtained from the IRS to returns that he had given the bank determined tax returns

1

he had provided the bank grotesquely exaggerated his income. His actions amounted to attempting to secure a loan illegally.

The fee issue created a conflict which infected the plea discussions and lack of investigation performed. Under the Federal standard of review a new trial must be ordered.

It is undisputable that the fee attorney Uhl charged Mr. Morse was excessive and the way in which he obtained it criminal. In this time frame charging $12,500 for the work he did in the district court was grossly excessive. According to the records, the attorney appeared a few times on the various allegations, once on the sex charges, and forced petitioner to plead to the charge and receive a jail sentence. At the time he did so, he obtained $10,000 from a bail assignment which belonged to another person. This was theft.

One would not secure the additional $10,000 fee unless one's intent was to keep it. Otherwise, the $2,500 fee already obtained would have been enough. The case was in the district court. There was no need for Mr. Uhl to follow it to the superior court if it was indicted. If one were to wish to achieve what the judge spoke about, that is justification of earning the fee, Mr. Uhl should have done what the defense bar calls "putting on a dog and pony show" before pleading him out. Mr. Uhl did not have time or energy for this. He did not wish to justify his expenditure of time --- he wanted to steal the money. He was caught by Mr. Hickey.

This of course makes the presentation of the negotiated deal as a take it or leave it as inherently coercive and therefore, unethical. It proves that the defense counsel was interested in quickly concluding the representation of the petitioner and getting his "fee." Otherwise, the attorney would have the client plea without securing the additional fee.

The truth of these allegations is supported by the affidavit of James Hickey, an individual who has served as a bank official, Commonwealth official, and was colleague of the late Governor Paul Cellucci. A. 1/79-82 The affidavits demonstrates that immediately following the plea, when Mr. Hickey confronted Mr. Uhl about his criminal behavior in coercing the bail assignment and collecting on those illegal actions and Mr. Uhl obviously fearing being caught returned the $10,000 obtained by a cohered bail assignment. A. 1/79-82

Mr. Morse sought relief from these actions with the BBO and filed a motion to withdraw his plea. A. 1/35-43, 4/56-66 Mr. Morse alleged cohesion of his plea and detailed the theft of the money. A. 1/35-43, 4/56-66 Not surprisingly, Mr. Uhl, then a member of the bar, continually engaged in felonious activity which breached fiduciary obligations which would later result in his prosecution, conviction, and sentencing for tax issues. A. 3/422-442, 450, 461-631 Not unsurprisingly, a judge of the United States District Court awarded a substantial jail sentence. A. 3/422-442, 450, 461-631

3

These activities resulted in his indefinite suspension from the practice of law in Massachusetts and disbarment in other jurisdictions. A. 3/422-442, 450, 461-631

These actions support the view that Mr. Uhl was disreputable, a discredit to the bar, and nothing more than a thief. Moreover, the testimony of James Hickey and Ms. Gloria Urbie Patulak and the conviction of Mr. Uhl corroborate Mr. Morse's allegations against Mr. Uhl. A. 1/78-82, 69-72, 84-90

**GROUND TWO: PLEA COUNSEL OFFERED INEFFECTIVE ASSISTANCE OF COUNSEL.**

Plea counsel was ineffective in representing the petitioner. The failure to pursue and detail a defense in preparation for trial and disposition was ineffective assistance of counsel. This resulted in a defective plea to the charges.

Plea counsel if he had undertaken an investigation and properly advised Mr. Morse would have developed and detailed the following:

1. That the alleged victim abuse on a prior occasion would explain the victim's sexual knowledge and actions attributing wrongful behavior to Mr. Morse A. 3/634-643;

2. That the victim's mother had her daughter claim abuse was in direct retaliation for Mr. Morse desiring to leave the relationship. A. 1/86-87 The desire for Mr. Moore to leave was supported by the victim's mother's actions when he was traveling

on business and theft of his belongings. A. 1/86-87  She had
engaged in sexual relations with another man and had stolen and
sold Mr. Morse's coin collection.  A. 1/86-87 Moreover, Mr. Morse
impending departure from the relationship was supported by his
surrendering his car to creditors to allow purchase of a less
expensive model to decrease his living expenses and his recent
looking for apartments to rent on his own A. 1/86-87;

3.  That the mother refused to take the child to therapy and
even frustrated that effort obviously because the story was
concocted and/or not believed by the mother A. 3/150;

4.  That the mother and daughter had and continue to have
lifestyles that support them being sociopaths A. 1/66-68, 77-78,
3/273-281; and

5.  That the alleged victim's mother had a well-known and
poor reputation for truth and veracity and had even lied to the
police to prevent Mr. Morse from retrieving his belongings and had
told falsehoods and misused the courts before.  A. 1/66-68, 77-
78, 73-76.

Had Mr. Morse been aware of the above he never would have
plead guilty, especially given the effect of having to register as
a sex offender.

**GROUND THREE: THE PLEA WAS NOT KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY MADE.**

A guilty plea must be knowingly, voluntarily and intelligently made.

In the case at bar, the actions plea by Mr. Morse was plainly involuntary given the representation provided by Mr. Uhl. As detailed above, Mr. Uhl failed to perform an investigation which would have demonstrated a defense to the matter. Without an understanding of the available defense the plea is by its nature not knowingly, voluntarily, and intelligently made.

In ruling on the evidence, the court was aware that during the hearing the Commonwealth stated that the raw sentencing guidelines on the case were 40 to 60 months (approximately 3 to 5 years), see transcript page 80-96. Against this a ten-year sentence would have been excessive.

**GROUND FOUR: THE ~~DEFENDANT~~ PETITIONER IS INNOCENT.**

Conviction of the innocent is repugnant to the United States Constitution. Here, the above sections demonstrate that Mr. Morse is innocent.

Prior proceedings.

The petitioner was found in violation of his probation and awarded a committed sentence. He was serving this sentence when he filed his motion for a new trial. The appeal of that violation

of probation is reported in Commonwealth v. Morse, 50 Mass. App.
Ct. 582 (2000).

The petitioner filed a motion to revise and revoke which was
denied.

Prior attorneys.

The petitioner was also represented by:

Christopher LoConto at an arraignment Fitchburg District Court,
Fitchburg, MA  (N.B. He served as counsel to Mr. Uhl.)

John Bosk at a revise and revoke P.O. Box 475, Fitchburg, MA 01420.

John Morrison on a violation of probation, address unknown.

Marie McGuirk withdrew from appellate representation, address
unknown

Mark W. Griffin on appeal of the violation of probation, 3 Orange
Street Unit 4, Newburyport, MA 01950.

Michael Murray on an arraignment, address unknown.

Michael Bailey on an arraignment, address unknown.

Filings.

The petitioner filed a motion for new trial (vacate plea) in
late December 1998.  This pleading was found in the court's file.
The same motion was refiled several months later.  The petitioner
was in jail at that time.  The court took no action on either
filing until pressed by present counsel years later.  As a result
of the sex conviction the petitioner must register as a sex
offender in Massachusetts.

**Worcester Division**
**District Court Department**
225 MAIN STREET, ROOM 1019
WORCESTER, MA 01608



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 01608   $ 000.68⁰
02 1W
0001403095 FEB 28 2018

Attorney David Erickson
570 Massachusetts Ave
Acton   MA 01720

01720$2905 C002

Exhibit "B"



TELEPHONE:   508-831-2010
FAX:   508-797-0716

OFFICE HOURS:
MONDAY-FRIDAY
8:00 A.M. TO 4:30 P.M.

## *Commonwealth of Massachusetts*
## *District Court Department*

**225 MAIN STREET**
**WORCESTER, MASSACHUSETTS 01608**

BRENDAN T. KEENAN
**ACTING**
**CLERK-MAGISTRATE**

DAVID P. DESPOTOPULOS
**FIRST JUSTICE**

**ASSOCIATE JUSTICES**
MICHAEL G. ALLARD-MADAUS
JANET J. McGUIGGAN
JENNIFER L. GINSBURG
ROBERT J. PELLEGRINI
MARK A. GOLDSTEIN

**ASSISTANT CLERK-MAGISTRATES**

BARBARA A. O'BRIEN
MICHAEL D. PROSSER
PAUL X. JOHNSON
TIMOTHY F. CONTE
BRENDA D. SEAVER
MARCIA E. GREEN
PAUL R. ROGERS

February 28, 2018

Atty. David Erickson

570 Massachusetts Ave.

Acton, MA 01720

Dear Atty Erickson,

    Enclosed is Judge Pellegrini's decision regarding the Motion for New Trial on
Commonwealth vs Timothy Morse, Clinton District Court  Dockets 9768CR1487,
9768CR1556 and 9868CR0085.

Sincerely,

Donna Duquette

Worcester, SS

Clinton District Court

Nos. 9768 CR 1487, 1556 and
9868 CR 85

Commonwealth

v

Timothy Morse

**Court's Decision on the Defendant's Motion for New Trial**

On October 21, 2017, the Defendant's testimony was taken and argument was heard by the Court on this Motion.

During his testimony, Morse recalled his dealings with Attorney Uhl at the Clinton District Court on February 20, 1998. He recalled receiving the plea tender ("the green sheet") in the lockup from his attorney. Morse noted that it had been signed by the prosecutor, and Uhl purportedly told him, words to the effect, that if he didn't sign it that day he'd be looking at 10 years in jail (presumably if the case were prosecuted as a rape in the Superior Court).

Despite claims of being pressured, Morse conceded that he was fearful that if he did not accept the plea that day he would thereafter be indicted. This concern suggest that the prosecutor intended to present the case to the Grand Jury, if, on that date, the defendant refused the plea reduction with an agreed upon recommendation. The fact that the terms of the plea were "agreed" further suggest that the prosecutor would not entertain a charge reduction if the agreement on sentencing was not accepted. Had the Grand Jury indicted the defendant and had he been convicted in the Superior Court, he would undoubtedly have faced a substantial state prison sentence.

No credible evidence was offered during the hearing to suggest that Uhl's admonition of a possible ten year sentence after trial and conviction in the Superior Court was unreasonably beyond the realm of possibility. Although current counsel was invited by this court to submit evidence of what the Superior Court guidelines would have set for a sentencing range in 1998, he did not do so.

The record is consistent with a rational decision by the defendant to enter into a District Court disposition rather than risk the potential additional exposure in the Superior Court. The defendant concedes a colloquy was done by Judge Fallon after he signed the tender, further buttressing that the plea was given knowingly, voluntarily and intelligently. The court endorsed the tender making a finding, among others, that the facts as related by the prosecutor "would support a conviction on the charges to which the plea ... was made."

In the defendant's memorandum of December 28, 1998, he wrote that Uhl "threatened" him but he never stated the words that were used. Although Uhl may have been adamant in emphasizing that time was of the essence in making a decision on this likely last offer before a submission to the Grand

1

Jury, there exist no credible evidence that Uhl was forcing Morse's hand to accept the offer. Morse concedes he reviewed the tender (though he claims he didn't understand it, which the court does not credit), but he also concedes that the Judge did do a colloquy in the courtroom, where he would have been told among other things "that he was giving up his right to be tried" and that his "admission was not the result of "force or threats". Morse made no claim that the Judge did not do a complete and thorough colloquy or that he did not understand what the plea judge said during the colloquy.

Although the defendant testified that he signed the tender because he was naïve and was pressured by Uhl, he also said that he felt that he "needed to sign" because he was fearful "they would indict [him]." There is no question that the defendant would have experienced stress while undertaking this major decision. In his mind he might have even subjectively felt pressured. But, by signing the tender (the original of which is in the court's file with Morse's legible signature on it) he avoided the risks of a Superior Court trial on the rape of a child charge and substantially lessened the extent of incarceration had there been a conviction (Child rape does carry the potential of a life sentence). Had he not accepted the District Court plea, his fear of an indictment was likely given the prosecutor involved and the District Attorney's Office custom and practice at the time. The "stress inherent in entering guilty pleas, such as the concern for possibly receiving a harsher sentence if a defendant is tried and found guilty...do[es] not necessarily render pleas involuntary. Commonwealth v. Berrios, 447 Mass. 701,708 (2006). See also, Commonwealth v. Bowen, 63 Mass. App. Ct. 579 (2-005).

There is no evidence submitted that Attorney Uhl had a history of not going over tenders with his clients in criminal cases or "forced" them into pleas to quickly access retainers. Attorney Uhl's subsequent conviction in Federal Court a decade later was for tax issues and did not involve Uhl's handling of criminal cases and pleas. Had the Defendant's case proceeded in the Superior Court and to trial, Uhl would probably have been able to establish his entitlement to a fee close to $12,500.00 as opposed to the $2,500.00 fee he ultimately received. The Defendant's contention that Uhl forced the plea to get the $12,500.00 is unsubstantiated by credible facts and remains in the realm of conjecture and surmise.

Additionally, the defendant does not specifically claim that Uhl was ineffective in recommending that the defendant accept the prosecutor's plea offer. In the Defendant Attorney's Memorandum dated November 17, 2017 reference is made to the obligations of defense counsel. The CPCS policy manual seemingly mandates that defense counsel must "...take advantage of a disposition that may not be available later..." The credible evidence strongly establishes that the Defendant knowingly elected on February 20, 1998 to take advantage of the prosecutor's plea offer. Further, the trial court judge could have properly inferred that Morse's admissions were voluntary from the fact that the consequences of his plea were ultimately favorable to him. Any capable lawyer would have similarly presented the same recommendation to the defendant at the time and any defendant would have been hard pressed to consider it and possibly take it.

Further, the defendant has failed to credibly connect Uhl's 2010 tax evasion conviction with the claim that he ineffectively failed to develop a proper defense strategy from the date of the defendant's arraignment on 11/21/97 to the date of his plea on 2/20/98. Given that the plea was likely a one-time offer on that latter date, there effectively was not much time to have developed an extensive trial strategy. It was not unusual at the time that the prosecutor's take it or leave it offer would have been made at or about the ninety day mark from the date of the Defendant's arraignment. Situations such as this were fairly common in the District Court at the time on cases such as this one.

2

The defendant claims he was naïve at the time when he accepted the plea offer. Weighing against the defendant's claim of naiveté was the fact that he had a criminal record with the court system before the February 20, 1998 plea. The reasonable inference from the record is that Morse had at the time a good understanding of how the courts operated. He had, among other things, been placed on probation on 2/1/85 for larceny less in the Marlborough District Court, received a 10 day committed sentence for attaching motor vehicle plates in the Framingham District Court Jury Session on 4/4/91 and received a 10 day suspended sentence in the Marlborough District Court on 9/24/91 for operating with a suspended license.

There are other contradictions in the record that diminish Morse's claim that he was forced into the plea. On February 20, 1998, Morse also pled guilty (before Judge Fallon) to a domestic assault and battery, 9768 CR 1484, and a restraining order violation, 9868 CR 85. Uhl also represented Morse on these cases. In his handwritten Memorandum of Law dated 12-28-98, the defendant wrote that "It should be noted that the defendant also pleaded guilty to a charge of Domestic Assault and Battery in which (sic) is not an issue of dispute." The defendant later contradicted himself in his own pleadings from December of 1998 by claiming the pleas "were induced by threats" and should be expunged, in part, because he reportedly feared consecutive sentences on all complaints. If on 2/20/98 Uhl told the defendant that he was facing possible consecutive sentences, there is evidence in the files that this was credible. When the defendant was found in violation of his probation on 6/23/98, a guilty finding was entered by Judge Fallon and the defendant was sentenced to 2 ½ years committed on 9868 CR 0085 (209A) which was to run "on and after "the 18 month sentence that Morse received on the probation violation of 9768 CR 1556 (Indecent Assault and Battery). These facts further call into question the credibility and reliability of the defendant's recollections from that time.

Additionally, Morse claims that Uhl knew that the bail posted by Gloria Uribe was not hers to assign, but he never explained in his 6/23/98 statement how Uhl knew of this prior to the assignment of the bail on January 2, 1998. One claim made is that the money was a loan from a bank officer named Hickey. In his 2014 affidavit, Hickey does not give the particulars of how Uhl knew this either. Other confusion abounds in the paperwork. Hickey suggest in his affidavit that the $10,000.00 was a loan to Uribe and her mother "to be used for bail." Hickey seemingly contradicts himself in this regard in his letter dated December 24, 1997 when he writes to the bail officer at the West Boylston House of Correction. Hickey wrote at the time that he was "enclosing" his bank check in the amount of $10,000.00 to be used as Morse's bail and that Uribe was presenting this check on his behalf because "he [was] unable to present this in person". In Uribe's affidavit dated 12/16/14, she further confuses the issue by stating that the $10,000.00 was in fact a loan that she and her mother obtained with Hickey's assistance. She states in her affidavit that Uhl knew that the money was for bail but she does not explain why she and Morse later assigned the money to Uhl. Neither Morse, Hickey nor Uribe submitted any contemporaneous writing regarding the loan corroborating that the money was for bail only. Because of all of the confusion in the record, the court does not credit the defendant's claim that prior to the assignment Uhl knew that the $10,000.00 was for bail purposes only.

The contradictions in the correspondence are difficult to reconcile. Uhl's actions at the time of the assignment may suggest he was viewing it as part of his fee in the event the case was tried in the Superior Court. However, what is clear from the record is that on 12/24/97, Uribe posted the bail in her name and on 1/2/98, and she and Morse assigned it in writing to Uhl with the added language that the "bail assignment is valid even if the bail is transferred to Superior Court." This document additionally

3

corroborates that the case was believed by Uhl, Uribe and Morse to be on a Superior Court track at that time. The case never made it to the Superior Court. This might explain why, in addition to Hickey's claim of possibly being a guarantor on the loan, Uhl, albeit begrudgedly, later returned the $10,000.00 to Hickey.

Further, Morse never explains what the actual fee arrangement was between him and Uhl were the case to go to trial in the Superior Court; therefore, his statement that "there is no doubt here that Attorney Uhl tried to illegally obtain the money" is highly exaggerated. Counsel also surmises in his argument that "Uhl obviously feared being caught (when he) returned the $10,000.00" without offering credible evidence to substantiate this claim. The fact remains that when Hickey demanded its return, Uhl did so. Because of the vagueness and confusion in the affidavits about the assignment of the $10,000.00 and the lack of any evidence about the fee agreement, the Court does not credit the defendant's claims that Attorney Uhl forced the plea solely to "steal" that money.

The defendant claims that on the day of the plea Uhl would not let him view the SAIN tape. There is no evidence that there were the requisite resources at the court on 2/20/98 to play the tape. Also, given that the defendant was in custody, it was highly unlikely that he would have been able to see the tape that day. His viewing the tape most likely would have been arranged for on another day, but to do so would likely have caused him to permanently forgo prosecutor's offer to resolve the case that day leaving open the possibility that the case might have been indicted by the next court date and scheduled for arraignment in the Worcester Superior Court. Had the Defendant even had the opportunity to see the SAIN tape, there is no credible evidence that this would have caused him to reject the prosecutor's offer. In Addition, Morse recklessly asserts that the prosecutor and Uhl were "close friends". There is absolutely no evidence to support this claim.

The fact that a Grand Jury presentation was highly probable is further corroborated in the "Surety Release". In the "Surety Release" dated January 2, 1998, signed by Morse and Uribe, it states, as is referenced above, that "This bail assignment is valid even if the bail is transferred to the Superior Court."

Regardless of Uhl's subsequent conviction in the United States District Court, judicial scrutiny of his performance must be highly deferential. It is all too tempting for a defendant to second-guess plea counsel's recommendations after conviction or adverse sentence, and it is all too easy for a court examining plea counsel's conduct to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' This court concludes that the Defendant has not met his burden here.

Morse offered documentary evidence calling into question the motives and veracity of the complainant and her mother regarding the allegations of the sexual assault.  This evidence does not cause the court to suspect that the allegations made against by the victim were untrue or exaggerated.

There exist insufficient credible evidence to conclude that justice was not done in this case.  After a review of the case file, the law, the arguments of the lawyers and testimony of the defendant presented at the hearing on this matter, the Defendant's Motion for a New Trial is <u>DENIED.</u>

X _____

Robert Pellegrini
Associate Justice of the Worcester District C...

January 8, 2018

5

Exhibit "A"

# Commonwealth of Massachusetts

Appeals Court for the Commonwealth

At Boston

In the case no. 20-P-336

COMMONWEALTH

*vs.*

TIMOTHY J. MORSE.

Pending in the <u>Clinton District</u>

Court for the County of <u>Worcester</u>

Ordered, that the following entry be made on the docket:

<u>Order entered January 8,</u>
<u>2018, denying motion for</u>
<u>new trial affirmed.</u>

By the Court,

_____, Clerk

*Joseph F. Stanton*

Date <u>January 20, 2022.</u>

NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

20-P-336

COMMONWEALTH

vs.

TIMOTHY J. MORSE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from a January 8, 2018 order denying the defendant's motion for a new trial. On appeal, the defendant argues that the motion judge abused his discretion in not recusing himself, in rejecting the defendant's numerous claims in support of the motion, and in making various evidentiary rulings. We affirm.

Background. In 1998, in the Clinton Division of the District Court Department, the defendant entered guilty pleas to related charges, under three separate docket numbers, of indecent assault and battery on a child under the age of fourteen (IAB); assault and battery; and violation of a protective order. Charges of rape and abuse of a child, unnatural acts with a child, dissemination of obscene material to a minor, intimidation of a witness, and two counts of

threatening to commit a crime were dismissed at the
Commonwealth's request.  Pursuant to a plea agreement, he was
sentenced on the IAB conviction to two and one-half years in a
house of correction, with six months to serve, the balance
suspended for two years.  On the other two charges to which he
pleaded guilty, the defendant received one-year probationary
terms, to run concurrently with each other and with his sentence
on the IAB conviction.[1]

     In 1999, the defendant, acting pro se, filed a motion to
withdraw his guilty pleas; the motion was never acted on.[2]  In
2016, now represented by counsel, the defendant amended his
motion to add claims and evidentiary support.  Among other
things, the motion asserted that plea counsel coerced the
defendant to accept the plea agreement by informing him,
incorrectly and for improper reasons, that he might face a ten-
year prison sentence if the case were indicted and tried to
guilty verdicts in Superior Court.  A motion judge, who was not
the plea judge, held a hearing in 2017 that included extensive

---

[1] The defendant later violated his probation, which was revoked,
leading to another sentence of two and one-half years in a house
of correction.  On appeal, the revocation order was affirmed.
See Commonwealth v. Morse, 50 Mass. App. Ct. 582 (2000).
[2] The motion was docketed in only one of the defendant's three
cases.  Each docket reflects the defendant's 2001 filing of a
motion to revise and revoke and a judge's denial of that motion,
but none of the dockets reflects further activity by the
defendant, the Commonwealth, or the court on the new trial
motion, until 2016.

2

legal argument and some testimony by the defendant, and denied the motion in 2018.  The defendant appealed.[3]

Discussion.  1.  Recusal.  The defendant argues that the judge should have recused himself after the defendant objected to the judge's hearing of the motion.  "The matter of recusal is generally left to the discretion of the [motion] judge . . . and an abuse of that discretion must be shown to reverse a decision not to allow recusal" (citation omitted).  Commonwealth v. Daye, 435 Mass. 463, 469 (2001).  Assuming arguendo that the defendant even sought recusal,[4] we see no abuse of discretion in the judge's decision not to do so.

At the outset of the motion hearing, the judge stated that he was aware of the defendant's "concerns about the desire to have an out of county judge," but that the judge did not "feel [he had] a conflict."[5]  The judge added that he had discussed the matter with the court's First Justice and said, "I don't have a problem.  I said it may be an issue raised by you on appeal. But we deal with cases every day here involving Worcester

_____

[3] We allow the defendant's motion to enlarge by twenty-seven days the time for filing his notice of appeal.

[4] No recusal motion was docketed or appears in the record appendix.

[5] The defendant's cases had been prosecuted by the Worcester County district attorney's office, and plea counsel's office was in Worcester.  The Commonwealth states in its brief that plea counsel was a former assistant district attorney in Worcester County.

3

lawyers, people we know.  And it's my position I have no concern that I can't be impartial in this case."

When asked to recuse himself, "[a] judge must 'consult first his own emotions and conscience' to determine whether he possesses the capacity to rule fairly" (citation omitted). Daye, 435 Mass. at 469.  "Then, a judge must also conduct an objective appraisal of whether . . . his impartiality might reasonably be questioned" (quotations and citation omitted). Id.  Here, the judge's remarks reflect that he undertook this analysis.  First, he consulted his own emotions and conscience and determined that he "[did not] have a problem" and had "no concern" that he could not be impartial.  Second, after discussing the matter with the First Justice, he concluded that it was common for judges in Worcester County to deal with "Worcester lawyers, people we know," and that this was an insufficient reason for the motion to be heard by a judge sitting in another county.  Although the judge's discussion of the issue was abbreviated, the defendant has shown no abuse of discretion in the judge's analysis.

On appeal, the defendant argues that the judge should have recused himself because he served as an assistant district attorney (ADA) in Worcester County at the time of the defendant's 1998 guilty pleas.  The record contains no indication that the defendant raised this issue to the judge.

4

Even if the defendant had done so, however, such service alone did not require recusal.  The Massachusetts Code of Judicial Conduct requires disqualification where, among other things, the judge "served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy."  S.J.C. Rule 3:09, Canon 2, Rule 2.11(A)(5)(b) (2016).  The defendant offers no evidence that the judge, while an ADA, did either of those things.[6]  We reserve for later discussion the defendant's claim that the judge improperly relied on factual information learned in his capacity as an ADA.

2.  <u>Motion to withdraw guilty plea</u>.  We turn to the merits of the defendant's motion.  A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  See <u>Commonwealth</u> v. <u>Conaghan</u>, 433 Mass. 105, 106 (2000).  Given the "strong policy of finality," <u>Commonwealth</u> v. <u>Gordon</u>, 82 Mass. App. Ct. 389, 394 (2012), a judge should only grant a motion to withdraw a plea if "the defendant comes forward with a credible

---

[6] The defendant cites a 2012 newspaper article indicating that the judge had been an ADA in Worcester County since 1997 and that, as of late 2012, was the district court supervisor.  This falls far short of establishing any personal and substantial participation in the defendant's case.

5

reason which outweighs the risk of prejudice to the
Commonwealth" (footnote omitted), <u>Commonwealth</u> v. <u>DeMarco</u>, 387
Mass. 481, 486 (1982).  We review a judge's decision denying
such a motion "only to determine whether there has been a
significant error of law or other abuse of discretion."
<u>Commonwealth</u> v. <u>Grace</u>, 397 Mass. 303, 307 (1986).  We address
the defendant's claims seriatim.

   a.  <u>Conflict of interest</u>.  The defendant argued that plea
counsel had either (1) an actual conflict of interest, which
would entitle the defendant to relief without a showing of
resulting prejudice; or (2) a potential conflict of interest,
which would require a further showing of actual resulting
prejudice in order to warrant relief.  See <u>Commonwealth</u> v. <u>Dahl</u>,
430 Mass. 813, 817 (2000), quoting <u>Commonwealth</u> v. <u>Fogarty</u>, 419
Mass. 456, 459 (1995) (applying art. 12 of Massachusetts
Declaration of Rights).  The claimed conflict arose in
connection with the defendant's allegedly coerced assignment to
plea counsel of $10,000 in bail money in order to pay counsel's
fee.  This allegedly gave counsel an incentive to coerce the
defendant to plead guilty early in the case, so that counsel
could retain the fee without performing significant work.

   The judge explicitly declined to credit the defendant's
claim that plea counsel obtained the assignment improperly, and
the judge implicitly rejected the claim that $10,000 would have

been an excessive fee for a case that, if not resolved by plea
in District Court, was foreseeably headed for indictment in
Superior Court.  The judge found the defendant's claim, that
plea counsel coerced a plea in order to obtain an inflated fee,
to be "unsubstantiated by credible facts."  The $10,000 was
later returned in response to a demand by a friend of the
defendant.  On appeal, the defendant has not shown that the
judge's findings are clearly erroneous or that the judge made
any legal error in rejecting the conflict of interest claims.

    b.  <u>Coerced pleas</u>.  The defendant's affidavit alleged that
plea counsel coerced his pleas "by threatening [him] with a ten
year term if [he] didn't plead guilty."  As the judge observed,
this presumably referred to the possibility that without a
District Court resolution, the defendant could have been
indicted and then convicted in Superior Court.  At the motion
hearing, current defense counsel argued that the warning of a
possible ten-year sentence "was coercive; it wasn't really a
statement of fact."

    The prosecutor noted, correctly, that child rape carried a
potential life sentence.  See G. L. c. 265, § 23.  The
prosecutor represented that, under the sentencing guidelines, if
child rape were the only offense, "the bare minimum would [have]
be[een] [forty] to [sixty] months."  However, the sentencing
judge would have also "consider[ed] aggravating factors," such

as the age difference between the defendant and the five year old victim, the defendant's abuse of his position of trust as the victim's mother's boyfriend, and whether it was a repeated offense, as the victim had told police.  Such factors would have pushed the guidelines sentence "beyond [sixty] months."  Moreover, rape of a child was only one of nine separate charges against the defendant.

Current defense counsel nevertheless argued that "there's nothing about this case . . . that brings it outside whatever the guidelines are, . . . it's [forty] to [sixty]; you know, it's a little over three to five years. . . .  [T]hat's what [this case is] worth."  Counsel did not, however, take the judge up on his invitation to submit a posthearing affidavit explaining counsel's own guidelines calculations.[7]  The judge then found that plea counsel's advice about a potential Superior Court sentence was not unreasonable.  On appeal, the defendant has shown no clear error in that finding.  Moreover, it is

---

[7] The judge invited counsel to submit additional evidence on "what the range might have been . . . under the guidelines for a potential sentence if [the defendant] was convicted on everything or a couple of offenses."  Although it was the defendant's burden to show that plea counsel's advice was deficient, the defendant's posthearing submission failed to address the guidelines issue.  Thus, we reject the defendant's challenge to the judge's finding that counsel "was invited . . . to submit evidence of what the Superior Court guidelines would have set for a sentencing range in 1998, [but] he did not do so."

undisputed that the defendant signed the plea tender ("green sheet") reciting the rights he was voluntarily giving up by pleading guilty, and during the plea colloquy he did not say anything to indicate that he was being pressured.  The judge was not required to credit the defendant's testimony that his pleas were coerced.

c.  <u>Ineffective assistance of counsel</u>.  We dispose summarily of the claim that plea counsel was ineffective in failing to investigate the defendant's case before advising the defendant to plead guilty.  Nowhere in the defendant's appellate brief does he argue, with appropriate record citations, that plea counsel's alleged failure to investigate fell "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defence." <u>Commonwealth</u> v. <u>Saferian</u>, 366 Mass. 89, 96 (1974).  The defendant's vague and scattered assertions on these issues do not constitute acceptable appellate argument.[8]  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  See also

---

[8] In his appellate argument on recusal, the defendant inexplicably includes a recitation of what information he believes an appropriate investigation would have revealed.  That recitation fails to establish that the information would have been admissible at trial, or in some instances fails to establish that admissible information would have furnished a substantial ground of defense.

9

Maroney v. Planning Bd. of Haverhill, 97 Mass. App. Ct. 678, 683
n.8 (2020).

   d.  Newly discovered evidence.   The defendant's motion
asserted that newly discovered evidence entitled him to withdraw
his guilty pleas.   The argument is unavailing.   "A defendant
seeking a new trial on the ground of newly discovered evidence
must establish both that the evidence is newly discovered and
that it casts real doubt on the justice of the conviction."
Grace, 397 Mass. at 305.   The defendant made no attempt,
however, to meet his burden of proving that the evidence at
issue was "unknown to the defendant or his counsel and not
reasonably discoverable by them at the time of trial," or, here,
at the time of the guilty pleas.   Id. at 306.   Indeed, the
defendant's own affidavit asserted that this evidence came from
"witnesses who were available to [plea counsel]."[9]

   e.  Other arguments.   Contrary to the defendant's
conclusory assertions, the claimed newly discovered evidence
neither demonstrated his actual innocence nor "establish[ed] a
prima facie case for relief," so as to warrant the judge, in his
discretion, to permit postconviction discovery.   Mass. R. Crim.
P. 30 (c) (4), as appearing in 435 Mass. 1501 (2001).

---

[9] We thus need not and do not address "whether a voluntary guilty
plea constitutes a waiver of the right to seek a new trial on
the grounds of . . . newly discovered evidence."   Commonwealth
v. Scott, 467 Mass. 336, 361 (2014).

10

3.  <u>Evidentiary rulings</u>.   The defendant asserts that the judge erred in making various "evidentiary rulings."  We see no merit in any of these claims.  First, the defendant asserts that the judge "improperly limited the testimony of the defendant and then made clearly erroneous findings about his testimony."[10]  But the defendant cites no particular limits placed on his testimony and no particular resulting findings that he claims are clearly erroneous.

Second, the defendant asserts that "subsequent acts by [plea counsel] . . . are admissible in that the facts demonstrate his actions vis-à-vis the plea were intentional." But the defendant cites no ruling by the judge that excluded any evidence of plea counsel's postplea bad acts.  Rather, the judge's decision considered those acts but concluded that they did not alter his view of counsel's conduct in the defendant's case.

Third, the defendant asserts that his "complaint to the Board of Bar Overseers demonstrates that the actions of [plea counsel] were unethical." But the defendant does not identify any evidentiary ruling relevant to this issue, let alone explain why any such ruling was erroneous.  The defendant then claims that the judge's view of a letter written by plea counsel to the

---

[10] We quote here and <u>infra</u> from what appeared as upper case argument headings in the defendant's brief.

11

defendant, concerning counsel's ethical obligations, was clearly erroneous.  But nothing in the judge's ruling even addressed that letter, let alone made a finding based upon it.

Fourth, the defendant asserts that "the actions of [plea counsel] were incompetent in that they violated numerous Committee for Public Counsel rules."  Again, however, the defendant does not identify any evidentiary ruling relevant to this issue, let alone explain why any such ruling was erroneous. To the extent that the defendant challenges the judge's use of the term "mandate" to characterize a Committee for Public Counsel Services performance standard that is phrased in discretionary terms, the characterization does not materially undermine the judge's conclusion that the defendant failed to show plea counsel was ineffective.

4.  <u>Reliance on extrajudicial observations</u>.  The defendant argues that, during the hearing and in his decision on the motion, the judge improperly relied on knowledge gained in his previous work as an ADA about the workings of the district attorney's office and the practices of particular prosecutors and judges at the time the defendant entered his guilty pleas. The hearing transcript and the decision on the motion indicate

12

that the judge did rely on such knowledge.[11]  This was error.
"It is . . . plainly accepted that the judge is not to use from
the bench, under the guise of judicial knowledge, that which he
knows only as an individual observer outside of court."[12]
Duarte, petitioner, 331 Mass. 747, 749 (1954), quoting Wigmore
on Evidence § 2569 (3d ed. 1940).  See Commonwealth v. Bruno-
O'Leary, 94 Mass. App. Ct. 44, 50 n.9 (2018).  Among the reasons
is that the parties are unable to cross-examine the judge, as
they could an ordinary witness, to test the accuracy of his
perception and memory.

Nevertheless, the defendant has not shown that the reliance
on extrajudicial knowledge entitles him to a remand or other
relief in this case.  The principal findings to which such
knowledge related were that, if the defendant did not accept the
District Court plea agreement involving only six months of
committed time, he risked indictment and conviction in Superior
Court and a substantially more severe sentence.  We have set to
one side the judge's statements based on extrajudicial knowledge

---

[11] We reject, however, the defendant's claim that the judge's
comments reflected any bias in favor of the district attorney's
office.
[12] The defendant cites no authority indicating that the judge's
knowledge required him to recuse himself, but he was required to
put his extrajudicial knowledge out of his mind so as to decide
any factual issues based solely on the evidence before him.  If
he were unable to do so, recusal might have been required, but
we need not reach that issue here.

13

and, after reviewing the principal findings ·based solely on the affidavits and hearing testimony, and after considering the arguments of counsel, we cannot say that those findings are clearly erroneous.   Indeed, it is difficult to disagree with the judge's statement that "[a]ny capable lawyer would have similarly presented the same recommendation to the defendant at the time and any defendant would have been hard pressed [not] to consider it and possibly take it."

<u>Order entered January 8, 2018, denying motion for new trial affirmed.</u>

By the Court (Wolohojian, Sacks & Walsh, JJ.[13]),

*Joseph F. Stanton*

Clerk

Entered:   January 20, 2022.

---

[13] The panelists are listed in order of seniority.

From:      "SJC Full Court Clerk" <SJCCommClerk@sjc.state.ma.us>
Subject:   FAR-28684 - Notice: FAR denied
Date:      Thu, March 17, 2022 8:53 pm
To:        dhe@dhelaw.com,scott@lawoffice.link

Supreme Judicial Court for the Commonwealth of Massachusetts

RE:        Docket No. FAR-28684

COMMONWEALTH
vs.
TIMOTHY J. MORSE

Clinton District, WO No. 9768CR001556; 9768CR1484; 9868CR0085
A.C. No. 2020-P-0336

NOTICE OF DENIAL OF APPLICATION FOR FURTHER APPELLATE REVIEW

Please take note that on March 17, 2022, the application for further appellate review was denied.

Francis V. Kenneally Clerk

Dated: March 17, 2022

To: Nathaniel R. Beaudoin, A.D.A.
Ellyn H. Lazar, A.D.A.
David Hayes Erickson, Esquire