KeyCite Blue Flag – Appeal Notification
Petition for Certiorari Docketed by COURT OF COMMON PLEAS OF
PENNSYLVANIA, BUCKS COUNTY, ET AL. v. JASON PIASECKI,
U.S., May 30, 2019

917 F.3d 161
United States Court of Appeals, Third Circuit.

Jason PIASECKI, Appellant
v.
COURT OF COMMON PLEAS, BUCKS COUNTY,
PA; District Attorney Bucks County; Attorney
General of the Commonwealth of Pennsylvania

No. 16-4175
|
Argued March 6, 2018
|
(Opinion Filed: February 27, 2019)

**Synopsis**
**Background:** Petitioner, who had served probationary sentence for child pornography convictions but was still subject to sex offender registration requirements, petitioned for writ of habeas corpus. The United States District Court for the Eastern District of Pennsylvania, No. 2-14-cv-07004, Legrome D. Davis, J., 2016 WL 6246547, dismissed petition for lack of jurisdiction. Petitioner appealed.

**Holdings:** The Court of Appeals, McKee, Circuit Judge, held that:

[1] sex offender registration requirements were sufficiently restrictive to constitute custody, and

[2] sex offender registration requirements were part of petitioner's sentence for child pornography convictions.

Vacated and remanded.

West Headnotes (18)

[1]    **Habeas Corpus**
       "In custody" requirement, in general

Custody is the passport to federal habeas corpus jurisdiction. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[2]    **Habeas Corpus**
       "In custody" requirement, in general

The jurisdictional requirement for habeas corpus has two components, i.e., "custody" that arises "pursuant to the judgment of a state court" that is under attack. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[3]    **Habeas Corpus**
       "In custody" requirement, in general

The habeas jurisdictional provision requires that the petitioner be subject to a non-negligible restraint on physical liberty that is a direct consequence of the conviction being challenged. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[4]    **Habeas Corpus**
       "In custody" requirement, in general

Custody, as required for habeas jurisdiction, is not limited to actual physical custody. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[5]    **Habeas Corpus**
       "In custody" requirement, in general

For the purposes of habeas jurisdiction, a petitioner is "in custody" if he or she files while subject to significant restraints on liberty that are not otherwise experienced by the general public. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[6]     **Habeas Corpus**
        ⇒Fines and assessments

The monetary component of a sentence is not capable of satisfying the "in custody" requirement for federal habeas jurisdiction. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[7]     **Habeas Corpus**
        ⇒Particular issues and problems

Sex offender registration requirements under Pennsylvania state law were sufficiently restrictive to constitute custody, as required for federal court to have jurisdiction over habeas petition that was filed after petitioner's term of probation for child pornography convictions expired but while he was still subject to registration requirements; petitioner was required to report to state police barracks at least four times per year for rest of his life, any change of address, including any temporary stay, required trip to barracks within three business days, petitioner could have no computer internet use, petitioner was required to personally report to state police if he operated car, began storing car in different location, changed his phone number, or created new e-mail address, and any failure to abide by restriction was itself a crime punishable by up to ten years' imprisonment. 28 U.S.C.A. § 2254(a); 42 Pa. Cons. Stat. Ann. §§ 9799.15(a)(3), 9799.15(g), 9799.21.

1 Cases that cite this headnote

[8]     **Habeas Corpus**
        ⇒"In custody" requirement, in general

The state's ability to compel a petitioner's attendance weighs heavily in favor of concluding that the petitioner was in custody, as required for habeas jurisdiction. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[9]     **Habeas Corpus**
        ⇒Collateral consequences, in general

Even an onerous restriction cannot support habeas jurisdiction if it is nothing more than a collateral consequence of a conviction. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[10]    **Habeas Corpus**
        ⇒"In custody" requirement, in general

The custody that is a condition precedent to habeas jurisdiction must be a direct result of the conviction or sentence under attack when the petition is filed. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[11]    **Habeas Corpus**
        ⇒Particular issues and problems

A court will not have jurisdiction to rule on a habeas petition if the sentence imposed for the challenged conviction has fully expired at the time the petition is filed. 28 U.S.C.A. § 2254(a).

1 Cases that cite this headnote

[12]     **Habeas Corpus**
         ⟿Particular issues and problems

Sex offender registration requirements under Pennsylvania state law were part of petitioner's sentence for child pornography convictions, rather than mere collateral consequence of those convictions, as required for federal court to have jurisdiction over his habeas petition that was filed after his term of probation expired but while he was still subject to registration requirements; "sex offender supervision" and "registration" were listed on state court sentencing documents, and state courts had held that registration requirements were punitive. 28 U.S.C.A. § 2254(a); 42 Pa. Cons. Stat. Ann. § 9799.15(g).

1 Cases that cite this headnote

[13]     **Habeas Corpus**
         ⟿Particular issues and problems

Federal courts confronted with the question of whether sex offender registration requirements are part of the state court judgment of sentence, for purposes of federal habeas jurisdiction, look to state law to see if the state construes sex offender registration as a punitive aspect of a criminal sentence or a remedial measure imposed collaterally. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[14]     **Mental Health**
         ⟿Appeal

Under Pennsylvania law, challenges to a sex offender registration classification must be made in the context of a challenge to the judgment of sentence itself. 42 Pa. Cons. Stat. Ann. § 9799.15.

Cases that cite this headnote

[15]     **Mental Health**
         ⟿Registration and Community Notification

Under Pennsylvania law, sex offender registration requirements are imposed pursuant to the state court judgment of sentence. 42 Pa. Cons. Stat. Ann. § 9799.15.

1 Cases that cite this headnote

[16]     **Habeas Corpus**
         ⟿"In custody" requirement, in general

The custodial jurisdiction requirement for federal habeas petitions is satisfied by severe, immediate, physical, and punitive restraints on liberty that are imposed pursuant to, and included in, the judgment of a state court. 28 U.S.C.A. § 2254(a).

Cases that cite this headnote

[17]     **Habeas Corpus**
         ⟿Nature of Remedy in General

The writ of habeas corpus is not now and never has been a static, narrow, formalistic remedy. 28 U.S.C.A. § 2254.

Cases that cite this headnote

[18]     **Habeas Corpus**
         ⟿Nature of Remedy in General

The scope of the writ of habeas corpus grows in accordance with its purpose, i.e., to protect individuals against the erosion of their right to be free from wrongful restraints upon their

liberty. 28 U.S.C.A. § 2254.

Cases that cite this headnote

**\*163** Appeal from the United States District Court for the Eastern District of Pennsylvania (No. 2-14-cv-07004), District Judge: Honorable Legrome D. Davis

**Attorneys and Law Firms**

Peter Goldberger, Esq., 50 Rittenhouse Place, Ardmore, PA 19003, Matthew Stiegler, Esq. [Argued], 7145 Germantown Avenue, Suite 2, Philadelphia, PA 19119, Attorneys for Appellant

Karen A. Diaz, Esq., Stephen B. Harris, Esq. [Argued], Bucks County Office of District Attorney, Bucks County Justice Center, 100 North Main Street, Doylestown, PA 18901, Attorneys for Appellee

Aaron J. Marcus, Esq., Defender Association of Philadelphia, 1441 Sansom Street, Philadelphia, PA 19102, Attorneys for Amicus Defender Association of Philadelphia

Mark B. Sheppard, Esq., Montgomery McCracken Walker & Rhoads, 1735 Market Street, 21st Floor, Philadelphia, PA 19103, Attorneys for Amicus Pennsylvania Association of Criminal Defense Attorneys

Before: McKEE, AMBRO and RESTREPO, Circuit Judges.

## OPINION OF THE COURT

McKEE, Circuit Judge.

We are asked to decide whether a habeas corpus petitioner who was subject only to registration requirements under Pennsylvania's Sex Offender Registration and Notification Act ("SORNA") when he filed his petition was "in custody pursuant to the judgment of a State Court," as required for jurisdiction. We hold that the registration requirements were sufficiently restrictive to constitute custody and that they were imposed pursuant to the state court judgment of sentence. Accordingly, we will reverse the District Court and remand for further proceedings.

### I.

Following a bench trial in the Court of Common Pleas of Bucks County, Jason Piasecki was convicted of fifteen counts of possession of child pornography. On April 26, 2010, the court sentenced him to a term of three years' probation. At sentencing, the court informed Piasecki:

> So as to counts 16 through 30, as to each count the defendant is sentenced to 36 months' county probation. The conditions of his sentence are that he undergo sex offender supervision, that he be subject to ten-year registration, that he **\*164** have no unsupervised contact with minor children under the age of 18, excluding your son and your girlfriend's son, without written permission of Bucks County Adult Probation and Parole.
>
> You're to have no computer Internet use. You're to continue in treatment with Dean Dixon and Dr. Nover. You're not to drink, and you're to take medications as directed. You're ordered to pay court costs.
> I'm going to have you sign the mandatory sex offender conditions.[1]

At the time of sentencing, Pennsylvania sex offenders were subject to registration requirements under a statutory scheme referred to as Megan's Law III.[2] But in December of 2012, as Piasecki pursued appellate and collateral relief in state court, the Pennsylvania legislature permitted its Megan's Law statute to expire and replaced it with SORNA. It was enacted to "bring the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006."[3] Any state that did not implement restrictions similar to those set forth in the Adam Walsh Act stood to lose ten percent "of the funds that would otherwise be allocated for that fiscal year [under] ... the Omnibus Crime Control and Safe Streets Act of 1968."[4] When Piasecki filed his petition under 28 U.S.C. § 2254, SORNA applied retroactively to any Megan's Law registrant who lived in the Commonwealth.[5] An offender who had been required to comply with Megan's Law III was therefore automatically subject to SORNA's increased registration and reporting requirements.

Piasecki was a Tier III offender under the provisions of SORNA. Accordingly, he was required to register in-person with the State Police every three months for the rest of his life.[6] The statute also required him to appear, in-person, at a registration site if he were to:

- Change his name;

- Change his residence or become transient;

- Begin a new job or lose previous employment;

- Matriculate or end enrollment as a student;

- Add or change a phone number;

- Add, change, or terminate ownership or operatorship of a car or other motor vehicle, and, as part of that visit, provide his license plate number, VIN number, and location where the vehicle will be stored;
- Commence or change "temporary lodging;"[7]

- Add, change, or terminate any email address or other online designation; or
- Add, change, or terminate any information related to an occupational or *165 professional license.[8]

If Piasecki were to become homeless, he was required to "appear in person monthly and to be photographed."[9] Prior to any international travel, Piasecki had to "appear in person at an approved registration site no less than 21 days" before his anticipated departure.[10] Failure to abide by any of these reporting requirements exposed Piasecki to criminal prosecution.[11]

The parties do not dispute that Piasecki was subject to these restrictions—and only these restrictions—when he filed his § 2254 petition on December 4, 2014.[12] His probation and its attendant conditions of supervision had expired on April 26, 2013. Piasecki's habeas petition attacked his underlying conviction on four grounds, none of which are relevant to the issues before us.[13]

The District Court referred the matter to a Magistrate Judge, who recommended that the petition be dismissed for lack of jurisdiction. The Magistrate Judge acknowledged that Pennsylvania's SORNA statute made "sex offenders' registration obligations considerably more burdensome," but ultimately concluded that Piasecki was "free to live, work, travel, or engage in any legal activity without the approval of a government official."[14] The Magistrate Judge also concluded that Pennsylvania's sex offender registration requirements were "collateral consequences and not direct consequences of the petitioner's conviction."[15] Accordingly, the court reasoned that they were not part of the judgment of the state court and could not support habeas corpus jurisdiction.

In overruling objections that Piasecki filed to the Report and Recommendation, the District Court emphasized that Piasecki's sentence had expired, and that the registration requirements were "merely collateral consequences of a conviction."[16] It also noted that Piasecki's reporting requirements were not explicitly included in the state court's judgment and that the requirements were "remedial rather than punitive."[17] Consequently, the court held that they could not support habeas jurisdiction because they did not constitute custody.

We granted a certificate of appealability, and this timely appeal followed.

## II.[18]

[1] [2] [3] A federal court has jurisdiction to entertain a petition for a writ of habeas *166 corpus under § 2254 only if the petitioner was "in custody pursuant to the judgment of a State court" when the petition was filed.[19] "Thus, custody is the passport to federal habeas corpus jurisdiction."[20] The jurisdictional requirement has two components—"custody" that arises "pursuant to the judgment of a state court" that is under attack.[21] Put differently, the habeas jurisdictional provision requires that the petitioner be subject to a "non-negligible restraint on physical liberty" that is a "direct consequence of [the] conviction" being challenged.[22] Therefore, we must examine these elements separately to determine if Pennsylvania's SORNA requirements were sufficiently restrictive to constitute custody. If they were, we must determine if they were directly imposed pursuant to the judgment of a state court.

### A. "In Custody"

[4] [5] Over the past half-century, courts have addressed the issue of habeas custody in an effort to determine when various state-imposed restrictions were sufficiently onerous to constitute "custody" for purposes of habeas jurisdiction. It is now beyond dispute that custody is not limited to "actual physical custody."[23] Rather, for the

purposes of habeas jurisdiction, a petitioner is "in custody" if he or she files while subject to significant restraints on liberty that are not otherwise experienced by the general public.[24]

In *Jones v. Cunningham*, the Supreme Court considered whether a parolee was "in custody" for the purposes of habeas jurisdiction under 28 U.S.C. § 2241.[25] The conditions of Jones's parole required him to live with his family in Georgia; obtain permission to leave the community, change residence, and own or operate a car; and make monthly visits to his parole officer.[26] Additionally, he was required to permit parole officers to come into his home or place of employment, "follow the officer's instructions and advice," and be subject to "revocation and modification at any time."[27]

*Jones* held that these parole restrictions were sufficiently restrictive to render the petitioner "in custody." It rooted its analysis in the historical development of the custody requirement. The Court acknowledged that "the chief use of habeas corpus statutes has been to seek release of persons held in actual, physical custody in *167 prison or jail."[28] However, the Court also noted that courts had "long recognized the writ as a proper remedy even [when] the restraint [was] something less than close physical confinement."[29] For example, English courts permitted the use of habeas corpus where "a woman alleged to be the applicant's wife was being constrained by her guardians to stay away from her husband against her will."[30] The test employed in England was "simply whether she was 'at her liberty to go where she pleased.' "[31] *Jones* noted that United States courts have historically found that "the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody."[32] Rather, "[h]istory, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on [a person's] liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus."[33]

Turning to the specific conditions of Jones's parole, the Court found that they constituted custody because they "significantly restrain[ed] petitioner's liberty to do those things which in this country free men [were] entitled to do."[34] Indeed, the parole restrictions were myriad and demanding. The parole order confined Jones to "a particular community, house, and job at the sufferance of his parole officer."[35] He could not drive a car without permission, and he was required to open his home and place of employment to his parole officer at any time. Additionally, his parole officer required him to "keep good company and good hours," stay away from "undesirable places," and "to live a clean, honest, and temperate life."[36] Any failure to follow these provisions, however slight, could have resulted in Jones being returned to prison.

Under these circumstances, the Court concluded that even though Jones has been "release[d] from immediate physical imprisonment," his parole conditions "significantly confine[d] and restrain[ed] his freedom."[37] That was "enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute[.]"[38]

After *Jones*, the Supreme Court decided *168 *Hensley v. Municipal Court*.[39] There, it considered whether a similar—but slightly less—restrictive scheme than the one in *Jones* could support habeas jurisdiction to adjudicate a § 2254 petition of a petitioner who was released on his own recognizance pending appeal.[40] The relevant bail statute required Hensley to appear "at all times and places as ordered by the court or magistrate releasing him and as ordered by any court in which, or any magistrate before whom, the charge [was] pending."[41] Finally, any court could "revoke the order of release and either return him to custody or require that he give bail or other assurance of his appearance."[42]

The Court held that these conditions supported habeas jurisdiction even though Hensley was subject to less restrictive supervision requirements than Jones.[43] Despite the less intrusive requirements, Hensley was still subject to "restraints 'not shared by the public generally,' " as Jones had been.[44] Hensley was obligated to appear wherever and whenever a court ordered him.[45] He could not "come and go as he please[d]" because his "freedom of movement rest[ed] in the hands of state judicial officers, who [could have] demand[ed] his presence at any time without a moment's notice."[46] The Court also noted that any failure to abide by these conditions was, itself, a criminal offense.[47] He was, therefore, "in custody."[48]

We have also held that the jurisdictional "custody" requirement can be satisfied by restrictions other than physical confinement.[49] In *Barry v. Bergen County Probation Department*,[50] we were asked to decide whether a sentence of community service was sufficiently onerous to qualify as custody under § 2254. Barry's probationary sentence had expired when he filed his petition, but the sentencing court had also ordered him to complete 500 *169 hours of community service over a period of three years.[51] The community service requirement was imposed in lieu of a fine, which the sentencing court concluded Barry was unable to pay.[52]

We held that the community service obligation constituted custody even though the "State did not monitor or restrict Barry's every act" because his sentence nevertheless required him "to be in a certain place—or in one of several places—to attend meetings or to perform services."[53] Thus, he was "clearly subject to restraints on his liberty not shared by the public generally."[54] As a result, Barry's community service sentence constituted custody that was sufficiently restrictive to support habeas jurisdiction.[55]

In reaching that decision, we relied on *Dow v. Circuit Court of the First Circuit*, a per curiam decision from the Court of Appeals for the Ninth Circuit, which we found to be "quite compelling and analogous" to the question before us in *Barry*.[56] Dow's sentence for DUI required him to attend fourteen hours of alcohol rehabilitation classes.[57] He had the option of scheduling the classes over a three- or five-day period.[58] Dow filed a § 2254 petition after his probationary sentence was completed but before he attended the classes. The court concluded that Dow's in-class obligation supported habeas jurisdiction. The sentence required Dow's "physical presence at a particular place" and "significantly restrain[ed] [his] liberty to do those things which free persons in the United States are entitled to do."[59] His mandated presence at the classes meant that he could not "come and go as he please[d]."[60] Therefore, the Court held that the sentence "must be characterized, for jurisdictional purposes, as 'custody.'"[61]

More recently, in *United States v. Ross*,[62] we considered whether a $100 "special assessment" that accompanied a conviction for possessing a machine gun constituted "custody" for the purposes of § 2255.[63] Relying on the precedent we *170 have described above, *Ross* set forth a three-part test for answering that question.[64] We held that a restriction is custodial if it provides for restraints that are "(1) severe, (2) immediate (*i.e.* not speculative), and (3) not shared by the public generally."[65]

[6]Applying this test to Ross's special assessment, we concluded that a fine is not the type of obligation that can support habeas jurisdiction. We noted that the Supreme Court has "emphasized the physical nature of the restraints" when defining custody.[66] Ross's fine imposed no analogous restriction on his freedom of movement and thus could not be viewed as "severe."[67] Thus, Ross could not challenge a special assessment under § 2255. The decision was consistent with our own precedent and decisions of our sister circuit courts of appeals. Courts consistently conclude that the "monetary component of a sentence is not capable of satisfying the 'in custody' requirement of federal habeas statutes."[68]

[7] [8]Given this precedent, the question of whether Piasecki's registration requirements were sufficiently restrictive to constitute custody is easily answered. They were. At a minimum, Piasecki was required "to be in a certain place" or "one of several places"—a State Police barracks—at least four times a year for the rest of his life.[69] The state's ability to compel a petitioner's attendance weighs heavily in favor of concluding that the petitioner was in custody.[70] Further, Piasecki was not free to "come and go as he please[d]."[71] Any change of address, including any temporary stay at a different residence, required an accompanying trip to the State Police barracks within three business days.[72] He was even required to regularly report to police if he had no address and became homeless. In addition, Piasecki could have no "computer internet use."[73] *171 The SORNA statute also compelled Piasecki to personally report to the State Police if he operated a car, began storing his car in a different location, changed his phone number, or created a new email address.[74] These are compulsory, physical "restraints 'not shared by the public generally.'"[75] Unlike the special assessment considered in *Ross*, these restraints compelled Piasecki's physical presence at a specific location and severely conditioned his freedom of movement. They were more severe than the community service requirement in *Barry* or the mandatory alcohol classes considered in *Dow*.

Moreover, any failure to abide by the restrictions was "itself a crime," just like the situation facing the petitioner in *Hensley*.[76] If Piasecki failed to report to the State Police barracks within three days of any triggering event listed in the SORNA statute, he could be charged with a felony of the second degree.[77] In Pennsylvania, such felonies are punishable by up to ten years' imprisonment.[78] If Piasecki provided inaccurate information, he faced prosecution for a felony of the first degree and incarceration of up to twenty years.[79] Given the level of restriction imposed by the registration requirements and the harsh consequences that would result from failing to adhere to them, we easily conclude that the restrictions placed on Piasecki were "severe."[80]

The remaining two prongs of the test we announced in *Ross* are also easily satisfied. The restrictions were "immediate (i.e. not speculative)"[81]—neither side disputes that Piasecki was subject to all of SORNA's requirements when he filed the petition at issue. Finally, and as explained above, these restrictions were obviously "not shared by the public generally."[82]

*172 We recognize that several of our sister circuit courts

of appeals have found that various sex offender registration schemes were not sufficiently restrictive to constitute "custody."[83] As we explain below, many courts have held that registration requirements cannot support habeas jurisdiction because they were collateral consequences of a conviction that were not imposed pursuant to the judgment of a state court.[84] Others have held that sex-offender registration conditions do not impose a severe restriction on an individual's freedom.[85] We do not find those cases compelling for two reasons.

First, many of our sister circuit courts of appeals that have found sex offender registration requirements could not support habeas jurisdiction reached that conclusion when considering restrictions imposed under pre-SORNA statutes.[86] Those registration requirements were not as onerous as those imposed under SORNA.[87]

Second, we have explicitly departed from the courts that have held that registration requirements are not custodial because they do not require pre-approval from the government before a registrant travels, thus not limiting his or her ability to move freely.[88] In *Barry*, we held that custodial "restraint does not require 'on-going supervision' or 'prior approval.' "[89] Rather, we concluded that even though the government did not "monitor[ ] Barry's every move, [it] nevertheless performed an oversight function" and that "level of supervision was clearly adequate" to qualify as custody."[90] Accordingly, we cannot conclude that Piasecki's supervision did not amount to custody based on a "pre-approval" theory.

In sum, we hold that Piasecki was subject to severe restraints on his liberty not shared by the public generally. Tasks as banal as changing an e-mail address or taking a week's vacation required him to physically appear at a State Police barracks. Even in the absence of those ostensibly elective choices, Piasecki was compelled by the state to report to a police station every three months for the rest of *173 his life. We hold that those requirements were at least as restrictive as those encountered in *Barry* and *Dow* and clearly rise to the level of "custody" for purposes of our habeas jurisdiction.

### B. "Pursuant to the Judgment of a State Court"

[9] [10] [11]Even an onerous restriction cannot support habeas jurisdiction if it is nothing more than a "collateral consequence" of a conviction.[91] Rather, the custody that is a condition precedent to our habeas jurisdiction must be a direct result of "the conviction or sentence under attack" when the petition is filed."[92] Thus, a court will not have jurisdiction to rule on a habeas petition if "the sentence imposed for [the challenged] conviction has *fully expired* at the time [the] petition is filed."[93] This requirement is evident from the plain text of § 2254, which states that the petitioner must be "in custody *pursuant to the judgment of a State court.*"[94]

[12]We must therefore decide whether Piasecki's custodial restrictions were imposed as part of his sentence or if they were merely collateral consequences of his underlying child pornography convictions.

We begin at perhaps the most obvious starting point—the actual judgment of sentence entered by the state court. Two documents from the state court record inform and guide our inquiry—the "Bucks County Criminal Court Sheet" and the "Bucks County Mandatory Sex Offender Conditions" Order. Both show that the registration requirements were part of the judgment of sentence.

The Court Sheet has a handwritten notation under "Sentence," stating that, in addition to "Sex Offender Supervision," Piasecki was sentenced to "Registration" for "10 yrs." More compellingly, the Sex Offender Conditions Order states that Piasecki's "SENTENCE IS SUBJECT TO THE FOLLOWING CONDITIONS IN ADDITION TO THOSE WHICH APPEAR ON THE COURT SHEET." Under that heading, the sentencing court checked a box next to "Sex Offender Registration Pursuant to Megan's Law" and another box indicating "10 Year Registration."

These documents weigh strongly in favor of finding that the sex-offender registration requirements were part of Piasecki's sentence and therefore imposed "pursuant to the judgment of a state court."[95] Both of the documents plainly reflect that the registration requirements were a part of the sentence.

[13]As compelling as this record is, we will not end our inquiry there. Federal courts confronted with the question of whether sex offender registration requirements are part of the state court judgment of sentence also look to state law to see if the state construes sex offender registration as a punitive aspect of a criminal sentence or a remedial measure imposed collaterally. Our sister circuit courts of appeals that have held registration requirements are not imposed pursuant to the judgment of sentence have done so, in part, because the respective state courts have determined that their state registration schemes are remedial, not punitive."[96]

**\*174** Pennsylvania courts have concluded otherwise. Just two months before Piasecki filed his habeas petition, the Commonwealth Court of Pennsylvania decided *Coppolino v. Noonan*, which held that SORNA's "in-person updating requirements" were punitive.[97] There, Coppolino filed a writ of mandamus asking the Commonwealth Court to remove him from the list of offenders required to comply with SORNA. Like Piasecki, he had initially been required to register under Megan's Law, but became subject to SORNA's registration requirements when they took effect in 2012. He alleged that several of the new registration requirements were punitive and that subjecting him to the increased punishment violated principles of double jeopardy.

*Coppolino* held that the quarterly registration requirements were not punitive, but the in-person updates were. The court reasoned that the quarterly registration requirements were not punitive because they left Coppolino free to live as he chooses and did not prevent him from engaging in any given activity.

The in-person updates, however, were punitive because they imposed "an affirmative disability or restraint on registrants by inhibiting their ability to travel freely."[98] The court specifically pointed to the "temporary lodging" and "motor vehicle" restrictions that SORNA required registrants to follow and held that they were particularly restrictive.[99] If, the court surmised, a hotel where the registrant was planning to stay was full, "he would have three days to return to Pennsylvania and report the change in person or risk a five year prison sentence."[100] Similarly, it was "unclear how a registrant travelling to another city would be able to register, prior to renting a car there, a vehicle's license plate number and registration number and other identifier."[101] If the registrant were unable to determine such information in advance, he would have to return within three business days to report the information in person."[102] The court noted that this "might be impossible" depending on "where and how the registrant is traveling."[103]

*Coppolino* concluded that, by impairing a citizen's "basic right" of "freedom of movement," the periodic reporting requirements imposed an affirmative restraint that was disproportionate to any public purpose that it served.[104] "On balance, this disproportionality, along with the similarity to the traditional punishment of parole **\*175** and the substantial infringement of a fundamental right" led the court to conclude that the provisions were punitive.[105] Therefore, the Commonwealth Court held that those restrictions could not be applied to Coppolino without violating prohibitions against *ex post facto* laws.

The Pennsylvania Supreme Court affirmed *Coppolino* in a per curiam opinion.[106] But that was not its final say on Pennsylvania's SORNA statute. In *Commonwealth v. Muniz*,[107] it held that *all* of the SORNA registration provisions were punitive and that applying them retroactively violated the Pennsylvania Constitution.[108] The OAJC and two concurring justices agreed that the Pennsylvania legislature did not intend to create a punitive scheme—but nevertheless did so when it enacted SORNA.[109] Retroactive application of the scheme therefore violated the Pennsylvania Constitution's *ex post facto* clause.

As a result of *Coppolino* and *Muniz,* Pennsylvania courts have concluded that SORNA's registration requirements are punitive, not remedial—unlike the courts in nearly every other state. This supports Piasecki's claim that the registration requirements imposed upon him are punitive sanctions imposed pursuant to the state court's judgment of sentence rather than collateral consequences or remedial measures.

[14] [15]Moreover, Pennsylvania state court decisions have historically treated sex offender registration requirements as part of the judgment of sentence. The Commonwealth concedes that registrants seeking to challenge their registration status have traditionally done so by appealing the judgment of sentence, and Pennsylvania courts treat a registrant's "status" under a sex offender registration statute as "a component of the judgment of sentence."[110] Challenges to a registration classification, therefore, must be made in the context of a challenge to the judgment of sentence itself.[111] Thus, under Pennsylvania **\*176** law, SORNA registration requirements are imposed pursuant to the state court judgment of sentence.

Nevertheless, we recognize that one factor does support the contrary view. As the Commonwealth notes, the registration requirements at issue here were created more than two years *after* Piasecki was sentenced. Arguably, then, Piasecki's registration requirements were imposed pursuant to an act of the legislature, not a state court judgment. This argument has some force, but ultimately we disagree with the Commonwealth's position because Piasecki became subject to SORNA's registration requirements as a "direct consequence of [the] conviction" being challenged.[112]

Piasecki became subject to SORNA's registration requirements by virtue of his conviction and subsequent judgment of sentence. Under the initial version of SORNA passed by the Pennsylvania legislature, any person who was "required to register with the

Pennsylvania State Police ... prior to the [amendment]" and who had "not fulfilled the period of registration as of the effective date of this section" became subject to SORNA's increased registration requirements.[113] In other words, Piasecki was subject to SORNA's registration requirements because of the sentence imposed pursuant to the state court judgment.

We therefore conclude that SORNA's registration requirements rendered Piasecki "in custody pursuant to the judgment of a State Court" when he filed his petition.

### C. The Limits of Our Ruling

[16]Many of our sister circuits have predicted that a ruling such as the one we announce today would render the "in custody" requirement of the habeas statute superfluous.[114] Our decision today raises no such concerns. We do not hold that *any* collateral consequence of conviction can support habeas jurisdiction. Rather, we hold that the custodial jurisdiction requirement is satisfied by severe, immediate, physical, and (according to the state's own definition) punitive restraints on liberty that are imposed pursuant to—and included in—the judgment of a state court such as the one here. Truly collateral consequences—such as the "inability to vote, engage in certain businesses, hold public office, or serve as a juror"[115]—are not analogous to the restrictive and invasive regime created under SORNA's registration requirements. The physical compulsion of SORNA's registration requirements and their direct relation to the judgment of sentence set them apart from consequences *177 that are truly collateral and noncustodial.

Additionally, this is not a situation where Piasecki was in custody as a result of an intervening judgment such as a separate conviction or a civil commitment hearing.[116] In those cases, a litigant could not challenge a previously expired conviction that is no longer the source of any restrictions. As we have explained, Piasecki's registration requirements were part of his sentence and continue as such into the future. No separate order is involved.

Finally, nothing we have said should be interpreted as calling into question the wisdom or propriety of Pennsylvania's sex offender registration requirements. That determination is the province of the legislature, not the courts.[117] The legislature determined that long-term, in-person registration and supervision was necessary for those who commit sexual offenses[118]—including those who possess truly horrific videos such as those possessed by Piasecki. Today, we hold only that the restrictions that follow from that level of supervision constitute custody for the purposes of habeas jurisdiction.

### III. CONCLUSION

[17] [18]The writ of habeas corpus "is not now and never has been a static, narrow, formalistic remedy."[119] The scope of the writ has grown in accordance with its purpose—to protect individuals against the erosion of their right to be free from wrongful restraints upon their liberty.[120] SORNA's registration requirements clearly constitute a restraint upon liberty, a physical restraint not shared by the public generally. The restraint imposed on Piasecki is a direct consequence of a state court judgment of sentence, and it therefore can support habeas corpus jurisdiction. For all of the reasons set forth above, the order of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.

**All Citations**

917 F.3d 161

Footnotes

1    App. 150–52.

2    18 Pa.C.S. § 4915(a)(1) *et seq.* (expired Dec. 20, 2012).

3    42 Pa.C.S. § 9799.10 (citing P.L. 109-248, 120 Stat. 587).

4   P.L. 109-248, 120 Stat. 587 34, § 125 (implemented as 34 U.S.C. § 20927).

5   42 Pa.C.S §§ 9799.12–9799.14.

6   42 Pa.C.S. §§ 9799.15(a)(3), 9799.15(e)(3). A Tier III SORNA registrant could petition a court to exempt him or her from the registration requirements after twenty-five years provided that the registrant satisfied certain criteria and satisfy a threat assessment board. *Id.* § 9799.15(a.2)(1)-(9).

7   Temporary lodging is defined as "[t]he specific location, including street address, where a sexual offender is staying when away from the sexual offender's residence for seven or more days." 42 Pa.C.S. § 9799.12.

8   42 Pa.C.S. § 9799.15(g)(1)-(9).

9   42 Pa.C.S. § 9799.15(h)(1).

10  *Id.* § 9799.15(i).

11  42 Pa.C.S. § 9799.21(a); *see also* 18 Pa.C.S. § 4915.1 (relating to failure to comply with registration requirements).

12  Br. for Appellant 12; Br. for Appellee 13–15.

13  Specifically, Piasecki alleged that the incriminating statements that were admitted at trial were given in violation of *Miranda*; the evidence was insufficient to support the verdict; the Commonwealth failed to preserve electronic evidence that was favorable to his defense; and that his attorney was ineffective for failing to raise these issues.

14  App. 13a–14a.

15  App. 15a.

16  App. 3a.

17  App. 4a.

18  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 (granting jurisdiction over appeals from all final decisions of the District Court) and § 2253 (subjecting the final order in a habeas corpus proceeding to review). We granted a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) & (3). We review the District Court's dismissal of a habeas petition on jurisdictional grounds *de novo*. We review the denial of an evidentiary hearing for abuse of discretion.

19  28 U.S.C. § 2254(a).

20  *United States ex rel. Dessus v. Pennsylvania*, 452 F.2d 557, 560 (3d Cir. 1971).

21  28 U.S.C. § 2254(a).

22  *Stanbridge v. Scott*, 791 F.3d 715, 719 (7th Cir. 2015).

23  *Jones v. Cunningham*, 371 U.S. 236, 239, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

| | |
|---|---|
| 24 | *Id.*; *see also Lehman v. Lycoming Cty. Children Servs. Agency*, 458 U.S. 502, 510, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982) ("[P]ast decisions have limited the writ's availability to challenges to state-court judgments in situations where—as a result of a state-court criminal conviction—a petitioner has suffered substantial restraints not shared by the public generally."); *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cty., Cal.*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) ("The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty."). |
| 25 | *Jones*, 371 U.S. at 238, 83 S.Ct. 373. |
| 26 | *Id.* at 237, 83 S.Ct. 373. |
| 27 | *Id.* at 238, 83 S.Ct. 373. |
| 28 | *Id.* |
| 29 | *Id.* |
| 30 | *Id.* at 238–39, 83 S.Ct. 373 (citing *Rex. v. Clarkson*, 1 Str. 444, 93 Eng. Rep. 625 (K.B. 1722) ). |
| 31 | *Id.* (quoting *Clarkson*, 93 Eng. Rep. at 625); *accord Rex v. Delaval*, 3 Burr. 1434, 97 Eng. Rep. 913 (K.B. 1763) (ordering an indentured girl "discharged from all restraint, and be at liberty to go where she will" after her "master" assigned her to another man for "bad purposes"). |
| 32 | *Jones*, 371 U.S. at 239, 83 S.Ct. 373. |
| 33 | *Id.* at 240, 83 S.Ct. 373. |
| 34 | *Id.* at 243, 83 S.Ct. 373. The Court also observed that the Virginia statute that governed Jones's supervision explicitly provided that a "paroled prisoner shall be released 'into the custody of the Parole Board,' and the parole order itself placed Jones under the 'custody and control of the Virginia Parole Board.' " *Id.* at 241–42, 83 S.Ct. 373 (quoting Va. Code Ann. § 53-264). While not dispositive, the Court was informed by the plain language of the statute and the order to which Jones was subject. As we discuss below, Pennsylvania's sex offender registration requirements were included in the state court's judgment of sentence here. |
| 35 | *Id.* at 242, 83 S.Ct. 373. |
| 36 | *Id.* |
| 37 | *Id.* at 243, 83 S.Ct. 373. |
| 38 | *Id.* |
| 39 | 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). |
| 40 | *Hensley*, 411 U.S. at 351, 93 S.Ct. 1571. |
| 41 | *Id.* at 348, 93 S.Ct. 1571. Additionally, if he failed to "appear and [was] apprehended outside of the State of California" he waived |

his right to an extradition hearing. *Id.*

42  *Id.*

43  *Id.* at 348, 93 S.Ct. 1571 ("It is true, of course, that the parolee is generally subject to greater restrictions on his liberty of movement than a person released on bail or his own recognizance.").

44  *Id.* (quoting *Jones*, 371 U.S. at 240, 83 S.Ct. 373).

45  *Id.*

46  *Id.* at 351, 93 S.Ct. 1571.

47  *Id. Hensley* also found it compelling that the petitioner's liberty only resulted from a judicial order staying his sentence—which the government had twice tried to lift. In other words, incarceration was not a "speculative possibility." Rather, Hensley had been forced to "fend off the state authorities," and this "need to keep the stay in force [was] itself an unusual and substantial impairment of his liberty." Finally, the Court also noted that its holding "did not interfere with any significant interest of the State" because even if it had concluded that Hensley was not in custody, it would only delay the filing of the petition until he was incarcerated after the stay was lifted.

48  *Id.* at 351, 93 S.Ct. 1571.

49  *See, e.g. Barry v. Brower*, 864 F.2d 294, 296 (3d Cir. 1988) (finding that habeas jurisdiction continued "at least until the expiration of Barry's probationary term"); *Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984) ("Custody, however, has been liberally defined to include persons on parole, those released on their own recognizance pending appeal, and those who have been released from confinement pursuant to [a 'good behavior' time credit statute].").

50  128 F.3d 152 (3d Cir. 1997).

51  *Id.* at 159, 161.

52  *Id.* at 158–59.

53  *Id.* at 161.

54  *Id.* at 161 (citing *Dow v. Circuit Court of the First Circuit*, 995 F.2d 922 (9th Cir. 1993) (per curiam) ).

55  We rejected the state's argument that Barry was not in custody because he was not "supervised on a continuous basis." *Barry*, 128 F.3d at 161 (*citing Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2d Cir. 1996) ). A per curiam opinion issued by this Court in 2003, *Obado v. New Jersey*, 328 F.3d 716 (3d Cir. 2003) (per curiam), cited *Barry* for the proposition that "some type of continuing governmental supervision" was required to support habeas jurisdiction. However, *Obado* cited the portion of *Barry* that discussed the state's argument concerning habeas jurisdiction. *Obado*, 328 F.3d at 717 (citing *Barry*, 128 F.3d at 160). The very paragraph in *Barry* that *Obado* cites ends with the conclusion "that the state has read § 2254's custody requirement too narrowly," *Barry*, 128 F.3d at 160. In fact, *Barry* conclusively rejects that argument. *Id.* at 161 ("Equally unavailing is the State's contention that Barry was not 'in custody' because he was not supervised on a continuous basis.").

56  *Barry*, 128 F.3d at 160.

57  *Dow*, 995 F.2d at 922.

| | |
|---|---|
| 58 | *Id.* at 922–23. |
| 59 | *Id.* at 923. |
| 60 | *Id* (quoting *Hensley*, 411 U.S. at 351, 93 S.Ct. 1571). |
| 61 | *Id.* |
| 62 | 801 F.3d 374 (3d Cir. 2015). |
| 63 | *Ross*, 801 F.3d at 379. *Ross* arose in a slightly different context, but it is still helpful. In *Ross*, the government alleged that the petitioner was ineligible for relief under § 2255 because that statute could only afford relief to a "prisoner *in custody ... claiming the right to be released* upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States[.]" *Id.* at 378 (quoting 28 U.S.C. § 2255a). The issue in *Ross* was, therefore, about "custody," but not jurisdiction. Nevertheless, we addressed the definition of "custody" for the purposes of habeas corpus. Accordingly, we think that its analysis is helpful to our inquiry here. |
| 64 | *Id.* at 379. |
| 65 | *Id.* (parenthetical in original). |
| 66 | *Id.* at 379–80 (citing *Hensley*, 411 U.S. at 351, 93 S.Ct. 1571; *Peyton v. Rowe*, 391 U.S. 54, 66–67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *Jones*, 371 U.S. at 242, 83 S.Ct. 373). |
| 67 | *Id.* at 379. |
| 68 | *Id.* at 380 (citations omitted). |
| 69 | *Barry*, 128 F.3d at 161; 42 Pa.C.S. § 9799.15(a)(3). |
| 70 | *Dow*, 995 F.2d at 923; *Barry*, 128 F.3d at 160–61. |
| 71 | *Hensley*, 411 U.S. at 351, 93 S.Ct. 1571. |
| 72 | 42 Pa.C.S. § 9799.15(g)(2), (3), (4), (7). |
| 73 | Such prohibitions on computer and internet access are relatively common. Yet, it is not at all clear that the judges imposing such sweeping and unconditional bans appreciate the impact they would have if literally interpreted and enforced. A literal enforcement of such provisions would subject one to violation for using an ATM, using a "smartphone," seeking directions from any device that utilizes GPS navigation, or even driving a relatively late model car—most, if not all, of which are equipped with computers that are an integral part of the car's functioning. *See United States v. Voelker*, 489 F.3d 139, 148 n.8 (3d Cir. 2007) (noting that modern cars "contain at least one computer" and "might have as many as 50 microprocessors") (citations omitted). As a result, many courts have struck down statutes or vacated sentences that impose broad bans on computer and internet usage. *See, e.g., Packingham v. North Carolina*, —— U.S. ——, 137 S.Ct. 1730, 1738, 198 L.Ed.2d 273 (2017) (holding that a statute that prevented sex offenders from accessing social media websites violated the First Amendment); *United States v. Holena*, 906 F.3d 288, 295 (3d Cir. 2018) (vacating a sentence that banned a defendant from possessing or using a computer or other electronic communication device and prohibited him from using the internet without his probation officer's approval); |

*Voelker*, 489 F.3d at 144 (vacating a sentence that imposed "an absolute lifetime ban on using computers and computer equipment as well as accessing the internet"); *United States v. Miller*, 594 F.3d 172, 188 (3d Cir. 2010) (vacating a sentence that prohibited an offender from using a computer with internet access "unless he received approval from his probation officer to use the internet and other computer networks"); *United States v. Albertson*, 645 F.3d 191, 194, 200 (3d Cir. 2011) (vacating a sentence that barred an offender from using a computer with online access without preapproval from a probation officer and holding that, "in a time where the daily necessities of life and work demand not only internet access but internet fluency, sentencing courts need to select the least restrictive alternative for achieving their sentencing purpose"); *United States v. Holm*, 326 F.3d 872, 878 (7th Cir. 2003) ("We find that to the extent that the condition is intended to be a total ban on Internet use, it sweeps more broadly and imposes a greater deprivation on Holm's liberty than is necessary[.]").

74   42 Pa.C.S. § 9799.15(g).

75   *Hensley*, 411 U.S. at 351, 93 S.Ct. 1571 (quoting *Jones*, 371 U.S. at 240, 83 S.Ct. 373).

76   *Id.*

77   42 Pa.C.S. § 9799.21; 18 Pa.C.S. § 4915.1(c)(1).

78   18 Pa.C.S. § 106(b)(3).

79   42 Pa.C.S. § 4915.1(c)(3); 18 Pa.C.S. § 106(b)(2).

80   *Ross*, 801 F.3d at 379.

81   *Id.*

82   *Id.*

83   *See, e.g., Wilson v. Flaherty*, 689 F.3d 332, 338 (4th Cir. 2012); *Virsnieks v. Smith*, 521 F.3d 707, 719 (7th Cir. 2008); *Leslie v. Randle*, 296 F.3d 518, 521–23 (6th Cir. 2002); *Zichko v. Idaho*, 247 F.3d 1015, 1019 (9th Cir. 2001).

84   *See infra* Part II.B.

85   *E.g., Calhoun v. Attorney Gen. of Colo.*, 745 F.3d 1070, 1074 (10th Cir. 2014) (holding that "the Colorado sex-offender registration requirements at issue here are collateral consequences of conviction that do not impose a severe restriction on an individual's freedom" because the registrant was "free to live, work, travel, and engage in all legal activities without limitation and without approval by a government official"); *Virsnieks*, 521 F.3d at 719 ("[T]he Wisconsin sexual offender registration statute does not impose any significant restriction on a registrant's freedom of movement .... [It] does not limit where a registrant may move or travel within Wisconsin, within the United States or internationally").

86   *See Zichko*, 247 F.3d at 1019; *Leslie*, 296 F.3d at 521–23; *Wilson*, 689 F.3d at 338.

87   *See, e.g., Wilson*, 689 F.3d at 338 (allowing registration by mail); *Williamson v. Gregoire*, 151 F.3d 1180, 1184 (9th Cir. 1998) (same). We take no position on whether we would find such conditions sufficiently restrictive to constitute custody for habeas purposes if the issue were presented to us in an appropriate case.

88   *See, e.g., Virsnieks*, 521 F.3d at 719; *Williamson*, 151 F.3d at 1184 ("Williamson cannot say that there is anywhere that the sex offender law prevents him from going.").

| | |
|---|---|
| 89 | *Barry*, 128 F.3d at 161 (citing *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2d Cir. 1996) ). |
| 90 | *Id.* |
| 91 | *Maleng v. Cook*, 490 U.S. 488, 492, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (per curiam). |
| 92 | *Id.* at 490, 109 S.Ct. 1923. |
| 93 | *Id.* at 491, 109 S.Ct. 1923. |
| 94 | 28 U.S.C § 2254(a) (emphasis added). |
| 95 | 28 U.S.C § 2254(a) |
| 96 | *See Bonser v. District Attorney Monroe County*, 659 Fed. App'x 126, 127 n.1 (3d Cir. 2016) (quoting *Commonwealth v. Whanger*, 30 A.3d 1212, 1215 (Pa. Super. Ct. 2011) (noting that Pennsylvania deemed a sexually violent predator designation as a "collateral consequence of a conviction" and hence "not a sentence") ); *Calhoun*, 745 F.3d at 1074 (citing *People v. Sheth*, 318 P.3d 533, 534 (Colo. App. 2013) ("Moreover, the Colorado sex-offender registration requirements are remedial, not punitive.") ); *Virsnieks*, 521 F.3d at 720 (citing *State v. Bollig*, 232 Wis.2d 561, 605 N.W.2d 199, 205 (2000) ("[T]he Wisconsin sexual offender registration is considered remedial, rather than punitive, in nature.") ); *Leslie*, 296 F.3d at 522–23 (citing *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570, 585 (1998) ("The Ohio Supreme Court has also held that the sexual-predator statute is remedial as opposed to punitive in nature .... [This] provides additional support for our conclusion that the classification, registration, and community notification provisions are more analogous to collateral consequences ....") ). |
| 97 | *Coppolino v. Noonan*, 102 A.3d 1254, 1278 (Pa. Commw. Ct. 2014). |
| 98 | *Id.* at 1277. |
| 99 | *Id.* |
| 100 | *Id.* |
| 101 | *Id.* |
| 102 | *Id.* |
| 103 | *Id* (internal quotation marks omitted). |
| 104 | *Id.* at 1278. |
| 105 | *Id.* |
| 106 | *Coppolino v. Noonan*, 633 Pa. 445, 125 A.3d 1196 (2015) (per curiam). |
| 107 | 640 Pa. 699, 164 A.3d 1189 (2017). |

108    *Muniz*, 164 A.3d at 1193. *Muniz* was a divided opinion. Three justices joined the Opinion Announcing the Judgment of the Court ("OAJC") concluding that Pennsylvania's SORNA statute violated both the U.S. Constitution and the Pennsylvania Constitution, which, in their estimation, provided "even greater [*ex post facto*] protections than its federal counterpart." *Id.* at 1223. Two justices concurred in the entirety of the opinion except for the portions that held the Pennsylvania Constitution provided greater protections than the U.S. Constitution. In their view, the "state and federal *ex post facto* clauses are coterminous." *Id.* at 1232 (Wecht, J., concurring). The Chief Justice of the Pennsylvania Supreme Court dissented, finding that "SORNA does not impose punishment and, thus, does not violate either the federal or state constitutions' *ex post facto* clauses." *Id.* at 1233 (Saylor, C.J., dissenting). The net precedential effect of these opinions was "confined to the determination that SORNA's registration requirement is punishment that runs afoul of the *ex post facto* clause of the Pennsylvania Constitution when applied retroactively." *Commonwealth v. Hart*, 174 A.3d 660, 667 n.9 (Pa. Super. Ct. 2017).

109    *Muniz*, 164 A.3d at 1219, 1223; *id.* at 1224 (Wecht, J., concurring).

110    Br. for Appellee, 20 (quoting *Commonwealth v. Harris*, 972 A.2d 1196, 1201–02 (Pa. Super. Ct. 2009) ("We agree that the term 'judgment' is not limited to the court's sentence of incarceration, but also includes that status determination under Megan's Law.") ).

111    *Commonwealth v. Leonard*, 172 A.3d 628, 631 (Pa Super. Ct. 2017) ("Appellant challenges the requirements *imposed by the trial court* that he register as a sex offender for life based upon the court's interpretation of SORNA's requirements.") (emphasis in original); *Commonwealth v. Sauers*, 159 A.3d 1, 16 (Pa. Super. Ct. 2017) (noting that a challenge to a Tier III SORNA classification is a "non-waivable legality-of-sentence issue," vacating "the lifetime registration portion of Appellant's sentence" and "remand[ing] for re-sentencing under SORNA").

112    *Stanbridge*, 791 F.3d 715, 719 (7th Cir. 2015).

113    42 Pa.C.S. § 9799.13(3) (2012); 2011 Pa. Legis. Serv. Act 2011-111 (S.B. 1183) (PURDON'S)

114    *See, e.g., Calhoun,* 745 F.3d at 1074 (quoting *Maleng*, 490 U.S. at 492, 109 S.Ct. 1923)(suggesting that a holding that sex offender registration requirements can give rise to habeas jurisdiction "would read the 'in custody' requirement out of the statute"); *Wilson*, 689 F.3d at 339 ("To rule otherwise [and find that sex-offender registration requirements can support habeas jurisdiction] would drastically expand the writ of habeas corpus beyond its traditional purview and render § 2254's 'in custody' requirement meaningless.").

115    *Maleng*, 490 U.S. at 491–92, 109 S.Ct. 1923.

116    *Stanbridge*, 791 F.3d at 719.

117    To the extent that we have cautioned against imposition of overly broad restrictions on internet and computer use, *see supra* note 73, we have done so merely to call attention to the ease with which such restrictions can sweep further than intended or warranted and to note the unintended consequences that may follow if they are not appropriately tailored to focus on the conduct that the court was attempting to address.

118    42 Pa.C.S. § 9799.11.

119    *Jones*, 371 U.S. at 243, 83 S.Ct. 373.

120    *Id.*

**Piasecki v. Court of Common Pleas, Bucks County, PA, 917 F.3d 161 (2019)**

**End of Document**　　　　　　　　　　　　　　　　© 2019 Thomson Reuters. No claim to original U.S. Government Works.