UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TIMOTHY MORSE, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 22-40030-TSH |
| CLERK, CLINTON DISTRICT COURT,[1] | ) | |
| Respondent. | ) | |

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS THE PETITION FOR A WRIT OF HABEAS CORPUS**

In February 1998, the petitioner, Timothy Morse, entered guilty pleas to related charges, under three separate dockets, of indecent assault and battery on a child under the age of fourteen, assault and battery, and violation of a protective order.[2] Appx. 1, 7, 11. He has already served his sentences on these charges. See id. As a result of his convictions, he has been classified by the Massachusetts Sex Offender Registry Board ("SORB") as a level two sex offender, id. at 31-32, and is required to follow the provisions of the sex offender registration law, G. L. c. 6, §§ 178C-178Q, which includes annually registering as a sex offender.

Having failed to obtain relief from his convictions in state court, the petitioner filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. No. 1. He alleges that his convictions should be set aside because: (1) his plea counsel had an actual conflict with him that

---

[1] It is far from clear that the petitioner has named a proper respondent.

[2] References to documents filed in this case will be made as Doc. No. ___. References to the appendix that is being filed along with this memorandum of law will be made as Appx. ___.

1

required his pleas to be vacated; (2) his plea counsel was ineffective for failing to pursue exculpatory evidence that would have aided his defense; (3) his guilty pleas were not made knowingly, voluntarily, or intelligently; and (4) he is actually innocent of the charges. See Doc. No. 1 at 5-10, Doc. No. 1-1 at 1-6. The petition must be dismissed because the petitioner was not in custody for these convictions at the time he filed his petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 7, 1997, the Clinton District Court issued a criminal complaint (Docket No. 9768CR1484), charging the petitioner with assault and battery (G.L. c. 265, § 13A). Appx. 7, 9. On November 21, 1997, the Clinton District Court issued a second criminal complaint (Docket No. 9768CR1556), charging the petitioner with rape of a child (G.L. c. 265, § 23), indecent assault and battery on a child under fourteen (G.L. c. 265, § 13B), unnatural act with a child under sixteen (G.L. c. 272, § 35A), and dissemination of obscene material to a minor (G.L. c. 272, § 29). Appx. at 1, 3. Two months later, on January 22, 1998, the Clinton District Court issued a third complaint (Docket No. 9868CR0085), charging the petitioner with violating a protective order (G.L. c. 209A, § 7), intimidation of a witness (G.L. c. 268, § 13B), and two counts of threatening to commit a crime (G.L. c. 275, § 2). Appx. at 11, 13.

On February 20, 1998, the petitioner, represented by counsel, pled guilty to indecent assault and battery on a child under fourteen, in connection with the second criminal complaint (Docket No. 9768CR1556). Id. at 1. The other charges relating to that docket number were dismissed at the request of the Commonwealth. Id. The court sentenced the petitioner to two and one-half years in the House of Correction, six months to serve, with the balance suspended for two years, until February 25, 2000. Id. As conditions of probation, the court ordered the petitioner to have no contact with the victim and her family, to have no unsupervised contact

with children under fourteen, and to undergo sex offender counseling.  Id.  As a result of this conviction, the petitioner was required to register as a sex offender under the Massachusetts sex offender registration statute, which was originally passed in 1996.[3]  See St.1996, c. 239, § 1; Commonwealth v. Wimer, 480 Mass. 1, 2, 99 N.E.3d 778, 780 (2018).

On the same day, the petitioner pled guilty to the assault-and-battery charge from the first criminal complaint (Docket No. 9768CR1484) and the violating-a-protective-order charge from the third criminal complaint (Docket No. 9868CR0085).  Appx. at 7, 11.  The other charges relating to Docket No. 9868CR0085 were dismissed at the request of the Commonwealth.  Id. at 11.  The court sentenced the petitioner to one year of probation as to both charges, to be served concurrently with his sentence for indecent assault and battery on a child.  Id. at 7, 11.

On June 18, 1998, a warrant was issued for the petitioner's arrest for violating the terms of his stay-away/no-contact order, and the petitioner was arrested the following day.  Id. at 3.  On June 23, 1998, the petitioner was found to have violated probation and the Superior Court revoked probation and sentenced him to a committed term of two and one-half years in the House of Correction.[4]  Id. at 8, 13.  The petitioner filed a notice of appeal of that decision on July 3, 1998.  Id.  On July 28, 1998, the petitioner filed a motion to revise or revoke his sentence, which was denied by the court on December 28, 1999.  Id.  The petitioner also filed a pro se

---

[3] The Legislature substantially modified the sex offender registration statute in 1999.  Wimer, 480 Mass. at 2, 99 N.E.3d at 780.

[4] Although the docket entries relating to Docket No. 9769CR1556 indicate that the probation violation resulted in a sentence of "18 Months H of C Committed," see Appx. 3, the docket entries relating to Docket No. 9768CR1484 indicate that the petitioner was sentenced to serve "2 ½ yrs H of C Committed" as a result of his probation violation, see Appx. 9, as do the docket entries relating to Docket No. 9868CR0085, see Appx. 13.  This discrepancy has no effect on the argument presented below.

motion to withdraw his guilty pleas on May 17, 1999,[5] which was never acted upon by the court. Id. at 9.

The Massachusetts Appeals Court ("MAC") affirmed the revocation of the petitioner's probation on December 18, 2000. See Commonwealth v. Morse, 50 Mass. App. Ct. 582, 740 N.E.2d 998 (2000). On March 26, 2001, the petitioner filed a second motion to revise or revoke his sentence, which was denied on February 26, 2002. Appx. 4.

In 2004, following a hearing, the SORB found the petitioner to be a level two sex offender. See id. 31-32. On December 7, 2004, a letter was sent to the petitioner notifying him of the hearing examiner's final decision, what he was required to do as a level two sex offender, and his right to judicial review. Id.

On August 12, 2016, over seventeen years after he filed his original motion to withdraw his guilty plea, the petitioner, at that point represented by counsel, filed a motion to withdraw his guilty plea/motion for new trial[6] as to all three complaints. Id. at 5. A hearing was held on the petitioner's motion before the Superior Court on October 26, 2017. Id. at 29. On January 8, 2018, the court denied the petitioner's motion. Id. The petitioner filed a notice of appeal on March 6, 2018. Id. at 30.

---

[5] Though the docket entries relating to Docket No. 9768CR1484 indicate that this motion was filed on May 17, 1999, see Appx. 9, the petitioner contends that he originally filed these documents (the motion and supporting affidavit and memorandum of law) in December of 1998, and then refiled them in May of 1999 after he learned that the filings were never docketed. See Doc. 1 at 13-14. In any event, when no action was taken on this motion, the petitioner did not take any affirmative steps to have it addressed by the court until 2016, when represented by counsel, he filed a new motion to withdraw his guilty plea. Should this Court deny the respondent's motion to dismiss, the respondent reserves the right to argue that the petition is time-barred in connection with his briefing on the merits.

[6] Pursuant to Mass. R. Crim. P. 30 (b), a motion to withdraw a guilty plea is treated as a motion for new trial.

The MAC rejected the petitioner's arguments for relief and affirmed the denial of his motion to withdraw his guilty plea/motion for new trial on January 20, 2022. Commonwealth v. Morse, 100 Mass. App. Ct. 1121, 180 N.E.3d 1033 (unpublished opinion reproduced at Doc. 1-1 at 15-30). On March 17, 2022, the Massachusetts Supreme Judicial Court denied the petitioner's application for leave to obtain further appellate review. Doc. 1-1 at 31. The petitioner did not seek a writ of certiorari from the United States Supreme Court.

On March 18, 2022, the petitioner filed the petition for a writ of habeas corpus that is now before this Court. Doc. 1.

## ARGUMENT

**THE HABEAS PETITION SHOULD BE DISMISSED BECAUSE THE PETITIONER WAS NOT IN CUSTODY AT THE TIME HE FILED IT.**

The habeas petition should be denied because the petitioner was not in custody at the time he filed it. In order to obtain relief under § 2254, the petitioner must be "in custody" for the conviction that he seeks to challenge. See 28 U.S.C. §§ 2241(c), 2254(a). This "in custody" requirement is jurisdictional. Maleng v. Cook, U.S. 488, 490-491 (1989). "Custody is determined from the date that a habeas petition is first filed." Tinder v. Paula, 725 F.2d 801, 803 (1st Cir. 1984). See also Gonzalez-Fuentes v. Molina, 607 F.3d 864, 874 (1st Cir. 2010) ("custodial status would be determined as of the date a habeas petition is filed"). While "[t]he custody provision does not require incarceration or other actual, physical restraint of a person," it does require "that the person be subject to restraints not shared by the public generally, or "at the least there must be some type of continuing governmental supervision over the person." Tinder, 725 at 803 (internal quotations and citations omitted). "After the expiration of a term of imprisonment, parole, or probation . . . the state no longer has special supervisory authority over the person." Id. "Thus, a sentence that has been fully served does not satisfy the custody

requirement of the habeas statute, despite the collateral consequences that generally attend a criminal conviction." Id. (citations omitted).

Here, the petitioner had already fully served his sentence on the 1998 convictions at the time he filed his habeas petition in 2022, and he does not claim otherwise. Rather, he contends that he is still "in custody" for habeas purposes because he must continue to register as a sex offender as a result of his 1998 convictions. See Doc. 1 at 14-15. This argument is unavailing.

While the Supreme Court has never addressed the issue of whether having to register as a sex offender as a result of a conviction can satisfy the "in custody" requirement for habeas purposes, it has held that collateral consequences of a conviction, such as the inability "to vote, engage in certain businesses, hold public office, or serve as a juror," are insufficient to satisfy the "in custody" requirement for habeas relief. Maleng, 490 U.S. at 491-492. Similarly, although the First Circuit has not specifically addressed this issue, it has held that, "a sentence that has been fully served does not satisfy the custody requirement of the habeas statute, despite the collateral consequences that generally attend a criminal conviction." Tinder, 725 F.2d at 803. See also Lefkowitz v. Fair, 816 F.2d 17, 20 (1st Cir. 1987) (holding that the loss of a medical license did not render a sex offender who had completed his sentence "in custody"). Further, another member of this Court to have considered the question has held that the requirement that the petitioner register as a sex offender upon release from prison does not mean he would continue to be "in custody" for federal habeas purposes. See Johnson v. Ashe, 421 F. Supp. 2d 339, 342 (D. Mass. 2006).

The Court here should follow Johnson because it was reasonably decided and is in line with the vast weight of authority from the Courts of Appeals to have addressed the question. Of the six circuit courts that have addressed this issue, five have held that compulsory registration as

6

a sex offender is a collateral consequence that does not meet the "in custody" requirement for habeas purposes. See Hautzenroeder v. Dewine, 887 F.3d 737, 744 (6th Cir. 2018) (holding that the enhanced reporting requirements under Ohio's new sex offender registration law did not constitute being "in custody" for habeas purposes where petitioner's freedom of movement remained unconstrained); Calhoun v. Attorney Gen. of Colo., 745 F.3d 1070, 1074 (10th Cir. 2014) (holding that Colorado's sex offender registration requirements did not constitute being "in custody" for habeas purposes where requirements were remedial, not punitive and where petitioner was "free to live, work, travel, and engage in all legal activities without limitation and without approval by a government official"); Wilson v. Flaherty, 689 F.3d 332, 338 (4th Cir. 2012) (holding that Virginia's sex offender registration requirements, which required the petitioner to reregister every 90 days and reregister in person for any changes in residence, employment, vehicle ownership, or online contact information, did not constitute being "in custody" for habeas purposes); Virsnieks v. Smith, 521 F.3d 707, 719-720 (7th Cir. 2008) (holding that requirement that petitioner register under Wisconsin's sex offender registration statute did not constitute "in custody" for habeas purposes where statute did not impose any significant restriction on petitioner's freedom of movement, and where Supreme Court of Wisconsin had held that statute was remedial rather than punitive in nature); Williamson v. Gregoire, 151 F.3d 1180, 1184-1185 (9th Cir. 1999) (holding that having to register as a sex offender under Washington's sex offender statute did not meet habeas "in custody" requirement where statute did not place any physical restraints on petitioner's freedom of movement and petitioner did not have to register in person, but could instead effectuate registration by mail).

      The only case to come out of a Court of Appeals in which the Court held that the registration requirements under a state's sex offender registration statute could satisfy the "in

custody" requirements for habeas purposes is <u>Piasecki v. Court of Common Pleas, Bucks Cty.</u>, 917 F.3d 161 (3rd Cir. 2019).  There, Piasecki was classified as a level three sex offender under Pennsylvania's sex offender registration statute and had been placed under sex offender supervision as part of the sentencing proceeding.  <u>Id.</u> at 163-164, 173.  The sex offender registration statute at issue required Piasecki to register in person with the state police every three months for the rest of his life, and to appear in person at a registration site any time he wanted to leave home for more than seven days, travel internationally, change his residence, change his employment, matriculate or enroll as a student, add or change a phone number, or change an email address.  <u>Id.</u> at 164-165.  In addition, he was not permitted to use any computer to access the internet.  <u>Id.</u> at 164.  Further, the Pennsylvania courts had concluded that the statute's requirements were "punitive, not remedial—unlike the courts in nearly every other state."  <u>Id.</u> at 175.  Based on all of these factors, the Third Circuit concluded that Piasecki's registration requirements under Pennsylvania's sex offender registration statute satisfied the "in custody" requirement for habeas purposes.  <u>Id.</u> at 177.

Although it is the respondent's position that sex offender registration requirements never create custody for habeas purposes, <u>see</u> <u>Lefkowitz</u>, 816 F.2d at 20 ("even grievous collateral consequences stemming directly from a conviction cannot, without more, transform the absence of custody into the presence of custody for the purpose of habeas review"), hardly any of the circumstances that led the Third Circuit to conclude that Piasecki was in custody are present here.  First, Massachusetts's sex offender scheme has been deemed non-punitive by the state's highest court.  <u>See</u> <u>Doe, Sex Offender Registry Bd. No. 3839 v. Sex Offender Registry Bd.</u>, 472 Mass. 492, 496 n.4, 35 N.E.3d 710, 714 n.4 (2015) (noting that the sex offender registration statute is regulatory rather than punitive).  <u>See also</u> <u>Opinion of the Justices</u>, 423 Mass. 1201,

1241, 668 N.E.2d 738 (1996). Second, the petitioner here was not placed under sex offender supervision as part of his sentencing proceeding. Rather, he was required under the statute to register as a sex offender due to the nature of his offense. See id. at 1204-1206, 668 N.E.2d at 739-740. It was not until 2004, after the SORB held its own hearing, that the petitioner was classified as a level two sex offender. See Appx. 31-32. Finally, the conditions that the petitioner is subject to as a level two sex offender under the Massachusetts sex offender registry statute are more akin to the state sex offender registration conditions that were reviewed by the circuit courts in Hautzenroeder, Calhoun, Wilson, Virsnieks, and Williamson than those reviewed by the Third Circuit in Piasecki. Although the Massachusetts sex offender registration statute does have enhanced registration obligations for level two and level three offenders as compared to level one offenders (e.g., level two and level three offenders must register in person annually, whereas level one offenders may register by mail), see G.L. c. 6, §§ 178F, 178F1/2, the statute does not constrain the petitioner's freedom of movement or require him to report in person to a police station under numerous circumstances. See G. L. c. 6, §§ 178C-178Q. See also Abubardar v. Gross, 542 F. Supp. 3d 69, 76 (D. Mass. 2021) (quoting Doe v. Police Comm'r of Boston, 460 Mass. 342, 347, 951 N.E.2d 337 (2011) (noting that, under sex offender registration statute, sex offenders are required to provide certain information to local officials, including their home address and any secondary addresses, and any change of address, "but are otherwise 'free to live where they choose and to move freely within and without the Commonwealth.'"). Additionally, there is no provision in the Massachusetts sex offender registration statute prohibiting the petitioner from computer internet use. See id. Thus, the unique circumstances that were present in Piasecki are not present here.

In short, even if this Court were to conclude that there are some situations where a state's sex offender registration requirements could create custody for habeas purposes, there is nothing so unique or restrictive about the petitioner's requirements under the Massachusetts sex offender registration statute that would render it as such. While there can be no question that the petitioner has certain obligations under the Massachusetts sex offender registration statute, this is a collateral consequence of his conviction and does not constitute being "in custody" for habeas purposes.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the petition because the petitioner was not "in custody" for habeas purposes at the time he filed it.

Respectfully submitted,

MAURA HEALEY
Attorney General

/s/ Tara L. Johnston
Tara L. Johnston (BBO #658879)
Assistant Attorney General
Appeals Division
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2677
(617) 573-5358 (fax)
tara.johnston@mass.gov

Dated: May 23, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2022, I caused a true copy of this document to be served on the petitioner, Timothy Morse, by mailing the document by first-class mail, postage pre-paid to the following address:

Timothy J. Morse
38 Colby Avenue
Worcester, MA 01605

                                              <u>/s/ Tara L. Johnston</u>
                                              Tara L. Johnston
                                              Assistant Attorney General